Feliciano Acevedo, Juez Ponente
TEXTO COMPLETO DE LA SENTENCIA
Mediante recurso de revisión administrativa, comparece JLF Service Station, Inc. (parte recurrente). Nos solicita la revisión de la Resolución emitida por el Departamento de Asuntos del Consumidor (DACO). Se le impuso una multa de $4,000.00 por haber incurrido en una infracción a la orden de control del precio de la gasolina 2005-1.
Por los fundamentos que a continuación expresamos, resolvemos CONFIRMAR la Resolución recurrida.
I
Conforme surge del expediente ante nuestra consideración, la parte recurrente opera una estación de autoservicio de gasolina en la Carr. Núm. 3, Km. 49.7 del Barrio Quebrada Vueltas del Municipio de Fajardo. El 22 de julio de 2005, la estación de gasolina fue inspeccionada como parte de un operativo de monitoreo del precio de venta de la gasolina y de los márgenes de ganancias de los detallistas. El Sr. Erison O. Burgos, Inspector del DACO, verificó el precio de venta de la gasolina, revisó la última factura de compra del combustible y vertió la información recopilada en un formulario de encuestas mensual de precios de gasolina al detal (formulario de encuestas). La inspección inicialmente no reveló violaciones a la Orden 2005-01 sobre el Control de Márgenes de toda Gasolina Vendida al Detal mediante Auto Servicio (Orden 2005-01). Cabe señalar que la Orden 2005-01 fue emitida por el DACO el propio 21 de julio de 2005, en respuesta a la situación de *1109 emergencia creada por la escasez de gasolina, a raíz de la huelga de camioneros.
La División de Protección al Consumidor del DACO revisó el formulario de encuestas y su personal advirtió que el Inspector que visitó la gasolinera de la parte recurrida cometió un error de cálculo. En vista de ello, el 23 de julio de 2005, personal de DACO acudió a la gasolinera de la parte recurrente nuevamente para corroborar los datos del formulario de encuesta. En esta ocasión, la inspección arrojó violaciones a la Ley Núm. 5 del 23 de abril del 1973 y a la Orden 2005-01. Específicamente, el precio de venta por auto servicio de la gasolina era de 56.7 0 para la gasolina regular y 60.7 0 para la gasolina premium. Cabe señalar que los precios de venta eran los mismos de la pasada inspección. La investigación reveló que con estos precios el margen de ganancia de la recurrida era de 30 por galón en exceso al permitido por la Orden 2005-01 (130 por galón), en ambos tipos de combustible. Ese mismo día, DACO emitió el aviso de infracción 27143-6.
Posteriormente, el 1 de agosto de 2005, el DACO emitió notificación de infracción por la suma de $10,000.00. La parte recurrente solicitó la celebración de una vista administrativa y la misma se llevó a cabo el 10 de noviembre de 2005. El 24 de febrero de 2006, el DACO emitió una Resolución mediante la cual redujo la suma de la multa impuesta a $4,000.00.
Insatisfecha, el 21 de marzo de 2006, la parte recurrente presentó una moción de reconsideración. La misma fue acogida por el DACO, mediante Resolución del 30 de marzo de 2006. DACO concedió un término de 15 días al Interés Público para que se expresara en torno a los señalamientos de la reconsideración. El Interés Público solicitó prórroga y el 14 de junio de 2006, presentó su oposición mediante “Réplica a Reconsideración ”.
Finalmente, el 19 de junio de 2006, el DACO emitió una Resolución en la cual confirmó su determinación previa y mantuvo la multa en la suma de $4,000.00. Inconforme, acude ante nos la parte recurrente y aduce que DACO cometió los siguientes errores:
“/. Erró el DACO al no desestimar la infracción, pues el Interés Público no expuso los fundamentos, hechos, criterios o razones que justifiquen el haber establecido el margen de ganancia máximo de trece centavos (13‡) por galón, según lo requiere el Reglamento Número 45 (Enmienda 3) del 30 de abril de 1991. En la vista, el DACO debió establecer mediante prueba los criterios que utilizó para establecer trece centavos (13‡) como margen máximo de ganancia por galón. Cuando menos (sic), el DACO debió proveer copia en la Vista Administrativa de la mencionada Orden 2005-01 y demostrar que la misma cumplió con los requisitos del Reglamento 45, supra.

2. Erró el DACO al no desestimar la infracción, pues el interés Público no presentó evidencia alguna que demostrara que el Secretario del DACO había cumplido con los requisitos de publicación de la Orden 2005-01 establecidos en la Regla 6 del Reglamento 6811 del DACO del 18 de mayo del 2004 . El DACO debió demostrar mediante prueba que se cumplió con los requisitos de publicación establecidos en la Regla 6 de Reglamento 6811.

3. En la alternativa, erró el DACO al no reducir sustancialmente la multa utilizando los criterios de la Regla Número 10 del Reglamento 6794 del DACO del 7 de abril de 2005 en vista de que: (a) los funcionarios del DACO originalmente le indicaron al Recurrente que todo estaba en orden; (b) una vez. le señalaron la violación, el Recurrentej,] inmediatamente redujo los precios a los indicados por los funcionarios; (c) el Recurrente no especuló con los precios del combustible, simplemente mantuvo los precios que había establecido desde el principio del mes; y (d) el Recurrente nunca antes había sido multado por DACO. ” (Enfasis en el original.)
Contando con el beneficio de la comparecencia del DACO, procedemos a exponer el derecho aplicable.
*1110 II
A
Sabido es que las conclusiones e interpretaciones de los organismos y agencias administrativas especializadas merecen gran consideración y respeto de los tribunales. M&V Orthodontics v. Negdo. Seg. Empleo, 115 D.P.R. 183, 188 (1984). La revisión judicial debe limitarse a determinar si actuaron arbitraria o ilegalmente o en forma tan irrazonable que la actuación constituya un abuso de discreción. Franco v. Opto, de Educación, 148 D.P.R. 703 (1998).
La intervención judicial en estos casos, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. §2175; Otero v. Toyota, 163 D.P.R._(2005), 2005 J.T.S. 13; P.R.T.C. v. J. Reg. Tel. de P. R., 151 D.P.R. 269 (2000); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997).
La norma reiterada es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000); Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387 (1999); T. JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70 (1999).
La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no se hizo una determinación correcta de los hechos ante su consideración. Si existe más de una interpretación razonable de los hechos, los tribunales sostendrán la decisión de la agencia y no sustituirán su criterio por el de ésta. Al revisar las determinaciones de hechos, la evidencia debe ser considerada en su totalidad. Asoc. Vec. H. San Jorge v. U. Med. Corp., ante.
Ahora bien, las conclusiones de derecho pueden ser revisadas por el tribunal en todos sus aspectos. Miranda v. Comisión Estatal de Elecciones, 141 D.P.R. 775 (1996). Desde luego, esto no significa que los tribunales, al ejercer su función revisora, puedan descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Otero v. Toyota, ante; P.R.T.C. v. J. Reg. Tel. de P.R., ante. La doctrina sobre la revisión judicial reconoce, igualmente, que la interpretación de un estatuto por el organismo que lo administra y es responsable de su cumplimiento, merece gran respeto y deferencia judicial. Oficina de la Procuradora del Paciente v. Aseguradora MCS, 163 D.P.R._(2004), 2004 J.T.S. 160; Pacheco Torres v. Estancias de Yauco, 160 D.P.R. 409 (2003); Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000). Incluso, en casos marginales o dudosos, la interpretación de un estatuto por la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando dicha interpretación no sea la única razonable. P.R.T.C. v. J. Reg. Tel. de P.R., ante.
B
El DACO fue creado con el propósito primordial de vindicar e implementar los derechos del consumidor. Artículo 3 de la Ley Núm. 5 de 23 de abril de 1973, conocida como Ley Orgánica del Departamento de Asuntos del Consumidor, 3 L.P.R.A. §34Ib. Como parte de los amplios poderes que tiene DACO para proteger los derechos de los consumidores, el Artículo 6 (A) de la Ley, 3 L.P.R.A. §341 (E-A), le confiere al Secretario del DACO específicamente los siguientes poderes:
“Reglamentar, fijar, controlar, congelar y revisar los precios, márgenes de ganancias y las tasas de rendimiento sobre capitales invertidos a todos los niveles de mercadeo, sobre los artículos, productos y *1111 aquellos servicios que corriente y tradicionalmente se prestan y se cobran por horas o por unidad, se ofrezcan o se vendan en Puerto Rico, en aquellos casos que tales medidas se justifiquen para proteger al consumidor de alzas injustificadas en los precios, evitar el deterioro del poder adquisitivo del consumidor, y proteger la economía de presiones inflacionarias. ” (Enfasis suplido.)
Por su parte, el Artículo 3 de la Ley Núm. 228 del 12 de mayo de 1942, conocida como Ley de Estabilización de Suministros, 23 L.P.R.A., § 734 (Ley Núm. 228), en su Inciso (a) dispone entre otras cosas que "[ejl Administrador podrá, mediante reglas u órdenes, establecer aquellos precios máximos o beneficios máximos que en su criterio sean generalmente justos y equitativos...". La Ley Núm. 228 añade lo siguiente:

“Siempre que sea practicable, el Administrador tomará en consideración, al fijar precios máximos para artículos de primera necesidad, factores de tal importancia como, jornales y salarios prevalecientes, el poder adquisitivo general, las necesidades del pueblo de Puerto Rico, el coste ¡sicj de artículos de primera necesidad, incluyendo tributos sobre los mismos, y el coste [sicj de la distribución y transportación de los mismos. 23 L.P.R.A. § 734 (a).

Al fijar precios mínimos o beneficios mínimos para artículos de primera necesidad, el Administrador tomará en consideración factores de tal importancia como los jornales y salarios prevalecientes, el poder adquisitivo general, las necesidades del pueblo de Puerto Rico, el coste [sicj de los artículos, incluyendo tributos sobre los mismos, y el coste [sicj de la distribución y transportación de. éstos, el precio dEl Artículo prevaleciente en Puerto Rico a la fecha de la regla u orden, el precio dEl Artículo prevaleciente en el pasado o en períodos normales, el precio en otras áreas de producción, los márgenes normales de ganancias y las ventajas de producir el Artículo localmente. ” (Enfasis nuestro.)
Por otro lado, el Reglamento Núm. 45 del DACO de 30 de abril de 1991, Control de Precios de Venta de Gasolina, Kerosene, Aceite Diesel (Reglamento Núm. 45), establece en su Artículo 4, en cuanto a los criterios para la fijación de precios y márgenes de beneficio en la venta de gasolina, los siguientes criterios:

“ARTICULO 4: Ordenes de Precios

A iniciativa propia o a solicitud de parte interesada, el Secretario podrá emitir órdenes fijando y revisando los precios y márgenes de beneficio máximos en la venta de los productos aquí reglamentados a todos o a cualesquiera de los niveles de distribución a tenor con los siguientes criterios:

a. Costo de mezcla de crudo a la refinería.

b. Rendimiento de la mezcla de crudo a la refinería.

c. Demanda de productos derivados producidos por la refinería.

d. Créditos por la venta de productos no controlados por este reglamento.

e. Costos de refinación.

f. Diferencial de costos entre la gasolina con plomo y sin plomo.

g. Beneficio razonable para el refinador.

*1112
h. Beneficio bruto razonable para el mayorista y el detallista.

1. Margen razonable para gastos de operación.

2. Margen de beneficio neto razonable.

3. Movimiento o "turnover" del producto.

4. Ajuste al margen de beneficio bruto o en consideración al movimiento del producto. ”

Asimismo, el Reglamento Para la Congelación y Fijación de Precios de los Artículos de Primera Necesidad en Situaciones de Emergencia, Reglamento Núm. 5876, efectivo el 1 de enero de 1999 (Reglamento Núm. 5876), dispone en el Art. VI, inciso A, que cuando el Secretario del DACO “en su discreción, entienda que existe una situación de emergencia emitirá la orden que estime necesaria para atender la situación que se pueda estar con front and o.” (Énfasis nuestro.) A estos efectos, en casos de urgencia o falta de facilidades, el Secretario podrá ordenar su activación, a través de un anuncio televisivo o radial, o por cualquier otro medio de comunicación que tenga a su alcance. En este caso, publicará posteriormente la orden en un periódico de circulación general. Este reglamento define la frase “situación de emergencia” corno:
“Situaciones o consecuencias producidas antes, durante y después de los desastres producidos por el hombre o fenómeno de la naturaleza, tales como: accidentes, terrorismo, sabotaje, vandalismo, epidemias, huelgas, enfermedades, tormentas, huracanes, terremotos, maremotos, inundaciones, sequías. Se incluye la escasez, de productos provocada por una crisis local y/o internacional que altere o amenace con alterar el orden económico y/o social. ” (Énfasis suplido.)
Asimismo, el Art. V, inciso C del Reglamento Núm. 5876, establece como un artículo de primera necesidad en situaciones de emergencia todos los combustibles. Igualmente, el Art. IV, inciso M del antes referido Reglamento Núm. 5876, define la congelación de precios como una de las medidas que puede poner en vigor el Secretario del DACO, mediante una orden para lidiar con una situación de emergencia.
Por otro lado, el Reglamento para la Imposición de Sanciones y Multas, Núm. 6794, de 29 de marzo de 2004 (Reglamento Núm. 6794), se aprobó con el propósito de establecer unos parámetros claros que permitieran imponer multas y sanciones administrativas uniformes a los violadores de las leyes y reglamentos al amparo de la jurisdicción de dicha agencia. El Reglamento Núm. 6794, en su Regla 10 provee los criterios que debe tomar en cuenta el DACO para fijar una multa administrativa a quienes incurran en violaciones a las normas legales y reglamentarias del DACO, pudiendo tener en consideración el tratar de evitar que el infractor incurra en la misma violación o en violaciones similares. Además, la referida regla dispone los criterios que pueden servir de agravantes o atenuantes al momento de la agencia determinar el monto de la cuantía, tales como:

“ I) La disposición del infractor para corregir las acciones u omisiones que provocaron la violación;

2) El tiempo invertido por el infractor para corregir las acciones u omisiones que provocaron la violación;

3) La reincidencia;

4) El volumen de negocios del comercio o industria;

5) Además del volumen de negocios del comercio, se tomará en consideración si se trata de un negocio pequeño acorde con la Ley Núm. 454 de 28 de diciembre de 2000:

*1113
a. Se podrá reducir la multa impuesta si la violación se corrige en un período no mayor de quince (15) días.

b. Si corregir la violación toma un tiempo mayor del indicado, la agencia podrá - condonar hasta un cien porciento (100%) de la multa, si se prueba fehacientemente que el dinero a pagarse por concepto de la multa se utilizará para corregir la violación.

c. La provisión del sub inciso (a) de este artículo, se aplicará cuando el pequeño negocio cumpla de buena fe con el reglamento y demás exigencias de la agencia y la violación no constituya un acto criminal o una amenaza significativa a la salud, seguridad o al ambiente.

6) La naturaleza de la violación y si la misma acción u omisión del infractor representa peligrosidad para un consumidor en particular o para los consumidores en general.

7) El historial de infracciones de igual o similar naturaleza incurridas por el infractor. ”

III
Por estar estrechamente relacionados, discutiremos los dos primeros señalamientos de error de forma conjunta. En síntesis, alega la parte recurrente que la determinación de los márgenes de ganancia realizada por DACO no está apoyada en evidencia sustancial en el récord y no sigue los criterios establecidos por la ley y el. Reglamento Núm. 45. Señala que la determinación de DACO resulta arbitraria y caprichosa. No le asiste la razón. Veamos porqué.
Examinada la normativa aplicable, en particular, las leyes de protección al consumidor y el Reglamento Núm. 45, debemos concluir que las mismas remiten todo el proceso de fijación de precios y márgenes de ganancia al concepto de razonabilidad. Más allá de factores de fácil determinación, tales como los costos, que los reglamentos del DACO pueden precisar, los demás criterios están cubiertos por el concepto general de lo. justo y razonable. Cabe señalar que el criterio de razonabilidad es el mismo que impediría al Estado, por la prohibición contenida en la Sección 9, dEl Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, tomar la propiedad privada sin una justa o razonable compensación. Evaluada la Orden 2005-01, a la luz del concepto de razonabilidad y en vista de la situación de caos y emergencia que sufría el país en aquel momento por la escasez de combustible, concluimos que la misma resulta razonable y justificada.
Además, la parte recurrente no nos ha provisto evidencia alguna que demuestre que DACO erró al aplicar los Reglamentos Núms. 65 y 5876; que su actuación al emitir la Orden 2005-01, fuese arbitraria, irrazonable o ilegal; ni que se le haya lesionado los derechos constitucionales fundamentales. La parte recurrente tampoco ha derrotado la deferencia y la competencia que se reconoce a la resolución emitida por el foro administrativo.
La parte recurrente, según alega, no varió sus precios de venta de gasolina cuando comenzó el paro de camioneros, sino que mantuvo sus precios de venta fijados previamente, desde principios del mes de julio de 2005. Según surge de la transcripción de la vista administrativa, el representante de la parte recurrente admitió tener conocimiento de que el DACO expidió la Orden 2005-01, gracias a su hijo, quien a su vez se enteró de la expedición de la misma, a través del Internet. Tan pronto la parte recurrente tuvo conocimiento de la Orden 20005-01, su deber era asegurarse que los márgenes de ganancia y los precios de venta del combustible se ajustaran a dicha Orden. Ciertamente, no está en disputa el hecho de que la parte recurrente incurrió en la conducta imputada.
En cuanto al tercer señalamiento de error, insiste la parte recurrente que el DACO incidió al no reducir sustancialmente la multa impuesta basándose en los criterios según provistos por la Regla 10 del Reglamento de Sanciones y Multas. Tampoco le asiste la razón.
*1114 Originalmente, la multa impuesta por el DACO fue de $10,000.00, y en la Resolución emitida el 24 de febrero de 2006, la multa se redujo a $4,000.00. En la referida Resolución, el DACO taxativamente expresó lo siguiente:
“En el presente caso, surge que el infractor corrigió inmediatamente el precio marcado en las bombas y no violentó la directriz durante la vigencia de la Orden 2005-01, posterior al 23 de julio de 2005; que el Infractor no es reincidente en este tipo de infracciones, y cualifica como pequeño negocio al amparo de la Ley Núm. 454, supra. De igual forma al amparo del Art. 3 (b) de la referida Ley Núm. 454, cónsono con el inciso 5 (c) de la Regla 10 del Reglamento para la Imposición de. Sanciones y Multas, como la violación no constituye un acto criminal o una amenaza significativa a la salud, seguridad o ambiente, procede, en conjunto con los demás factores, la reducción de la cuantía de la multa impuesta, tomando en consideración, la razón, de emitirse la misma, entiéndase, la multa impuesta al amparo de la Orden Administrativa 2005-01. ” (Enfasis suplido.)
Resulta claro entonces y contrario a lo alegado por la parte recurrente, que el DACO redujo significativamente la cuantía de la multa en atención precisamente a los criterios establecidos en la Regla 10 del Reglamento Núm. 6794 (Multas y Sanciones), entre otros. Además, la cuantía reducida de $4,000.00 no es exagerada ni irrazonable, en vista del interés apremiante del estado de proteger los derechos del consumidor en un momento de caos y de crisis en todo el país, ante la escasez de un artículo de primera necesidad como la gasolina. Debemos señalar que a la parte recurrente se le permite acogerse a un plan de pago. En vista de todo lo anterior, no detectamos abuso de discreción del DACO en cuanto a la imposición de la cuantía de la multa, por lo que resolvemos no debemos intervenir con el dictamen administrativo. Por último, reconocemos la facultad que posee el DACO para reglamentar en situaciones de emergencia y la deferencia que le deben los tribunales a sus actuaciones.
IV
En mérito de las consideraciones antes expresadas, se confirma la Resolución recurrida.
Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Leda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2008 DTA 52
1. Véase Transcripción de la prueba oral, folios 54 y 56.
2. Véase, Resolución de 24 de lebrero de 2006, Recurso de Revisión Administrativa, Apéndice, Anejo E, folio 16.