CC-1998-382                     1

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| Asociación Vecinos del Hospital San Jorge<br>    Recurrentes<br><br>    v.<br><br>United Medical Corporation y Gerónimo Partnership, etc.<br>    Recurridos | Consulta de Ubicación<br><br>2000 TSPR 7 |
| --- | --- |

Número del Caso: CC-1998-0382

Fecha: 19/01/2000

Tribunal de Circuito de Apelaciones: Circuito Regional I

Juez Ponente: Hon. Roberto L. Córdova Arone

Abogados de la Parte Recurrente: Lcdo. Rafael E. Silva Almeyda

Abogados de la Parte Recurrida: Fiddler, González & Rodríguez
                                Lcdo. José A. Acosta Grubb
                                Lcdo. César T. Alcover Acosta
                                Lcdo. Juan Carlos Gómez Escarce

Abogados de la Jta. de Planificación: Lcdo. José Rodríguez Rivera
                                      Lcda. Everlidys Rodríguez Pacheco

Materia: Consulta de Ubicación

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

CC-1998-382

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación Vecinos
del Hospital San Jorge

    Demandantes-Recurrentes

       Vs.                    CC-1998-382     CERTIORARI

United Medical Corporation y
Geronimo Partnership, Etc.

    Demandado-Recurridos

PER CURIAM

San Juan, Puerto Rico, a 19 de enero de 2000.

El Hospital de Niños de San Jorge adquirió sendos solares en la Calle Convento y en la calle San Jorge en Santurce clasificados dentro del distrito residencial (ZU-R1) según el mapa de zonificación de Santurce. En 1996, éste solicitó una enmienda a los mapas de zonificación con el propósito de cambiar la zonificación de estos dos solares a una comercial (ZU-G1 o G2), con miras a construir un edificio que albergaría un estacionamiento así como oficinas administrativas del Hospital. La Junta de Planificación (la Junta) denegó esta solicitud.

Del mismo modo, el Hospital, a través de Francinetti Arquitectos, solicitó una Consulta de Ubicación para la construcción de un proyecto similar al mencionado anteriormente. Este consistía de un

edificio de 298,700 pies cuadrados con una altura de 8 pisos por la Calle Convento y 10 pisos por la Calle San Jorge, de los cuales se utilizarían 279,200 pies cuadrados para acomodar 470 espacios de estacionamiento de vehículos de motor y 21,160 pies cuadrados para albergar servicios y facilidades hospitalarias. El edificio referido se construiría sobre seis solares contiguos a las facilidades existentes del Hospital, entre los cuales se encontraban los dos solares residenciales referidos.

Luego de celebradas vistas públicas, a las que comparecieron varios opositores, aquí peticionarios, el 3 de abril de 1997, la Junta aprobó la consulta de ubicación para el proyecto referido y notificó su resolución a esos efectos el 18 de abril de 1997.

Inconformes con esta resolución, los opositores, la Asociación de Vecinos del Hospital San Jorge (la Asociación) y el Sr. Sebastián Echeandía Rabell presentaron un recurso de revisión ante el Tribunal de Circuito de Apelaciones. Este, mediante sentencia emitida el 31 de marzo de 1998 y notificada el 14 de abril de 1998, confirmó la resolución de la Junta que aprobaba la referida consulta.

Oportunamente, la Asociación interpuso el presente recurso ante nos y planteó, en lo pertinente, lo siguiente:

1. Erró el Tribunal de Circuito de Apelaciones al confirmar la resolución de la Junta de Planificación aprobando la consulta de ubicación de los proponentes-recurridos cuando las conclusiones de la resolución de esta última no están sostenidas por evidencia sustancial.

2. Erró el Tribunal de Circuito de Apelaciones al confirmar la resolución de la Junta de Planificación que exime a los proponentes-recurridos de cumplir con los estatutos y la reglamentación establecida, incorrectamente y sin justificación.

El 30 de junio de 1998, en reconsideración, expedimos el recurso presentado por la Asociación. El 16 de octubre del mismo año, emitimos una resolución paralizando las obras del proyecto de estacionamiento. Tanto los proponentes-recurridos como la Junta de Planificación han comparecido, por lo que estamos en posición de resolver.

CC-1998-382                    4

## II.

Hemos resuelto reiteradamente que las determinaciones de organismos administrativos especializados merecen gran consideración y respeto. Misión Industrial de PR v. Junta de Calidad Ambiental, op. de 29 de junio de 1998, 145 D.P.R. ____, 98 JTS 77; San Vicente v. Policía de P.R., op. de 12 de noviembre de 1996, 142 D.P.R.___(1996), 96 JTS 148; Metropolitana, S.E. v. A.R.P.E., op. de 10 de abril de 1995, 138 D.P.R.____(1995), 95 JTS 39; Fuertes y otros v. A.R.P.E., op. de 17 de diciembre de 1993, 134 D.P.R.____(1993), 93 JTS 165; y Asoc. Drs. Med. Cui. Salud v. v. Morales, op. de 1ro de febrero de 1993, 134 D.P.R. ____(1993), 93 JTS 12. La Ley de Procedimiento Administrativo Uniforme en su sección 4.5 establece límites al alcance de la revisión judicial de decisiones administrativas y dispone que las determinaciones de hecho de las agencias serán sostenidas por el Tribunal si se basan en evidencia sustancial que obre en el expediente administrativo. 3 L.P.R.A. sec. 2175. Por lo tanto, estamos obligados a sostener tales determinaciones si están respaldadas por evidencia suficiente que surja del expediente administrativo considerado en su totalidad. Misión Industrial, supra; Facultad de Ciencias Sociales v. Consejo de Educación Superior, op. de 2 de junio de 1993, 133 D.P.R. _____, 93 JTS 88.

Hemos definido evidencia sustancial como "aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión." Misión Industrial v. Junta de Planificación de PR, 98 TSPR 856; Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 679, 687 (1953).

Por otro lado, las conclusiones de derecho que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. Rivera Rentas v. A & C Development Corp, op. de 26 de noviembre de 1997, 144 D.P.R. _____, 97 JTS 143. No obstante, como regla general los tribunales le reconocen

CC-1998-382          5

gran peso y deferencia a las interpretaciones hechas por la agencia administrativa de las leyes que tiene a su haber poner en vigor. T-JAC v. Caguas Centrum Limited, op. de 12 de abril de 1999, 147 D.P.R.____, 99 JTS 60. Comisionado de Seguros v. Antilles Ins. Co., op. de 2 de abril de 1998, 98 JTS 38, Calderón v. Adm Sistemas de Retiro, 129 D.P.R. 1020 (1992).

Esta deferencia judicial al "expertise" administrativo, sin embargo, cede ante una actuación irrazonable o ilegal. T-JAC v. Caguas Centrum Limited, supra.

Luego de examinado detenidamente el expediente administrativo en su totalidad no podemos avalar la conclusión de la Junta. Ésta no está sustentada por evidencia sustancial. Veamos.

I. La cuestión del tránsito. En el caso de autos, los opositores-peticionarios alegan que no se presentó ningún estudio de tránsito vehicular que apoyara la conclusión de que el proyecto recogería y mejoraría el tráfico que discurre por el sector mientras que sí se presentó testimonio del grave perjuicio que sufrirían los residentes y la comunidad con la construcción de dicho proyecto.

Los proponentes-recurridos, por su parte, alegan correctamente que no hay ley ni reglamento que exija la preparación de un estudio de tránsito. Sin embargo, el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, aprobado el 31 de mayo de 1995, otorga a la Junta el poder de requerir del proponente información adicional o aclaratoria, entre la que se incluye "estudios hidrológicos-hidráulicos, estudios de nivel de ruido, análisis de tránsito..." 23 R.P.P. sec. 650.236. Dicho reglamento confiere esta potestad para asegurarse que toda determinación de la Junta sea tomada de modo adecuado. Estos estudios son particularmente importantes cuando la comunidad que vive en el área donde se propone construir-y que vivirá con los efectos del proyecto- se opone a éste. Ante el testimonio vertido por los vecinos del sector, quienes lidian diariamente con la alegada situación de tránsito, el curso de acción más razonable y

CC-1998-382                6

lógico a seguir era requerir del proponente un estudio de tránsito para permitirle a la Junta tomar una decisión más informada. Por otro lado, durante el trámite ante la Junta de Planificación se presentó como alternativa que el edificio de estacionamiento se construyera en el mismo lugar utilizado actualmente como estacionamiento. Sobre esto, la Junta concluyó que "la ubicación propuesta es más conveniente, entre otros aspectos, debido a que tanto la entrada como la salida del edificio sería a una vía de cuatro carriles...." No vemos como sin tener ante sí un estudio del flujo de tránsito en el sector y el impacto que tendría el proyecto sobre éste, la Junta puede llegar a esa conclusión. Resolvemos que un análisis adecuado sobre el flujo del tránsito en el área cercana al proyecto y el impacto de éste es necesario para que la Junta pueda evaluar a cabalidad el proyecto en cuestión, antes de determinar si ha de aprobarlo y si ha de aprobar también las variaciones que el proyecto presenta a los reglamentos de zonificación.

La Junta concluyó que el "edificio propuesto aliviaría el problema de falta de estacionamiento y la congestión de tránsito en las calles circundantes." No podemos concluir que esta conclusión fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración, puesto que no está apoyada con evidencia adecuada que la sostenga. Misión Industrial v. Junta de Planificación, supra; Metropolitana S.E. v. Administración de Reglamentos y Permisos, op. de 10 de abril de 1995, 138 D.P.R. ____, 95 JTS 39.

II. La cuestión de la contaminación ambiental. La Junta también concluye sobre el aspecto de la contaminación ambiental causado por posible ruido de las alarmas de los carros y el polvo, "que hay que destacar que el edificio de estacionamiento propuesto tiene el propósito de recoger el tránsito que discurre actualmente por el sector y que se estacionan en las calles circundantes, por lo que no se puede concluir que va a haber aumento en polvo ni en alarmas." Esta conclusión tampoco está sostenida por evidencia sustancial contenida en

CC-1998-382                7

el expediente administrativo en ausencia de un estudio de tránsito. La Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, 12 L.P.R.A. 1123 et seq., al igual que el National Environmental Policy Act, 42 U.S.C.A. sec. 4332, incluye dentro de su alcance la protección de la calidad de vida para los residentes de las ciudades y reconoce que el ruido del tráfico, la sobrecarga de los sistemas de transportación y otras condiciones similares afectan el ambiente urbano y son el resultado de influencias profundas relacionadas a la alta densidad urbana y la expansión industrial. Véase Hanly v. Mitchell, 460 F 2d 640 (2nd Cir. 1972). Para poder llegar a esta conclusión era, por lo tanto, necesario que la Junta tuviese ante sí un estudio que examinara concretamente el impacto del proyecto sobre el medio ambiente del sector respecto a ruidos y polvo.

III.    La cuestión del Plan Maestro.    Los opositores también impugnan la determinación de la Junta de no requerir al Hospital presentar un Plan Maestro que contenga todos los planes de expansión previsto. Tanto la Junta como el foro recurrido coincidieron en que aunque hubiese sido preferible tener conocimiento de dicho plan, "dada la apremiante necesidad del edificio de estacionamiento, no sería lo más conveniente el requerirlo en este momento." Del expediente no surge una necesidad de estacionamiento tal que no permita aplazar la autorización del proyecto hasta tanto se presente un plan comprensivo de todo lo que el Hospital planifica desarrollar y expandir en el futuro. De hecho, del expediente no surge evidencia alguna que tienda a demostrar la necesidad del proyecto en el área. La consideración de dicho "plan maestro" permitirá a la Junta tener toda la información necesaria para poder descargar los deberes delegados a ésta mediante la Ley Orgánica de la Junta de Planificación. Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. sec. 62a. Según esta ley, es responsabilidad de la Junta dirigir el desarrollo integral de Puerto Rico de modo que "fomente en la mejor forma la salud, seguridad, el orden, la convivencia, la prosperidad, la defensa, la cultura, la solidez

CC-1998-382          8

económica y el bienestar general de los actuales y futuros habitantes del país." 23 L.P.R.A. sec. 62c. Sin los estudios correspondientes y sin conocer todos los detalles de lo que se propone hacer, la Junta no puede llegar a conclusiones que en efecto resultan en un cambio de zonificación. Sin esta información, la Junta desconoce todos los elementos necesarios para llegar a conclusiones serias y responsables que en última instancia afectan la calidad de vida de muchos ciudadanos.

III.

Como segundo error señalan los peticionarios que el Tribunal de Circuito de Apelaciones erró al confirmar la determinación de la Junta que eximía a los proponentes de cumplir con los estatutos y reglamentos vigentes, sin justificación.

La Junta de Planificación tiene como función principal formular e implementar la política pública sobre el desarrollo físico, económico y social de Puerto Rico de una manera integrada. Junta de Planificación v. JACL, 109 D.P.R. 210, 214 (1979). Como agencia administrativa, una vez ha promulgado un reglamento está obligada a cumplir con sus disposiciones. Comité de Vecinos Pro-Mejoramiento v. Junta de Planificación, op. de 19 de marzo de 1999, 147 D.P.R. ___, 99 JTS 32; García Cabán v. U.P.R., 120 D.P.R. 167 (1987); Díaz de Llovet v. Oficina del Gobernador, 112 D.P.R. 747 (1982); García Troncoso v. Adm Derecho al Trabajo, 108 D.P.R. 53 (1978). La agencia reguladora debe velar que los requisitos estatutarios establecidos en su reglamento sean cumplidos, sirviendo siempre los propósitos, objetivos y política pública que los forjaron. T-JAC, Inc.(Wal-Mart Caguas) v. Caguas Centrum, supra; Montoto v. Pelayo Lorié, op. el 11 de marzo de 1998, 145 D.P.R. ____, 98 JTS 25.

La consulta de ubicación es el vehículo administrativo procesal para que la Junta evalúe, y tome las determinaciones pertinentes sobre propuestos usos de terrenos que no son permitidos por la reglamentación

CC-1998-382                    9

aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. T-JAC, Inc.(Wal-Mart Caguas) v. Caguas Centrum, supra; Misión Industrial de Puerto Rico v. Junta de Planificación, 98 J.T.S. 79, res. el 30 de junio de 1998. "En el ejercicio de esa facultad, la Junta de Planificación tiene gran discreción pero ciertamente no es un cheque en blanco, ya que está sujeta a las normas y requisitos consignados en la ley. En el ejercicio de tal discreción la Junta no puede obviar sus propios estatutos en cuanto a usos de terrenos." T-JAC, Inc.(Wal-Mart Caguas) v. Caguas Centrum, supra.

A la luz de la normativa expuesta, debemos examinar si la Junta actuó razonablemente al eximir a los proponentes de cumplir con los reglamentos pertinentes.

En la consulta de ubicación objeto del presente recurso, el hospital propone construir el edificio de estacionamiento en un área de seis solares contiguos, dos de los cuales están clasificados ZU-R1 (zona de uso residencial uno) según el Mapa de Ordenamiento Territorial de Santurce. Los restantes solares tienen una clasificación de ZU-G3 (zona de uso general tres).

Previo a presentar esta consulta, los proponentes habían solicitado un cambio de zonificación para los referidos solares. Dicho cambio de zonificación fue denegado por la Junta de Planificación el 2 de octubre de 1996.

Según la Tabla de Usos Permitidos contenida en la sección 6.17 del Reglamento de Zonificación Especial de Santurce, 23 R.P.R. sec. 650.1885, un estacionamiento se encuentra entre los usos permitidos en una zona ZU-G3 pero no así en un distrito ZU-R1. La Junta correctamente determinó que no justificaba conceder una variación puesto que no se había establecido que ninguno de los usos permitidos en dicho distrito no eran factibles en la propiedad. Sección 35.5 del Reglamento de Zonificación Especial de Santurce, aprobado el 29 de octubre de 1993, 23 R.P.R. sec. 650.1915.

CC-1998-382                    10

Sin embargo, amparándose en lo dispuesto en la Ley Orgánica de la Junta de Planificación, la Junta aprobó un uso no permitido para los referidos solares. El artículo 11 de la Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. 62j(7), establece que la Junta puede

> [d]ispensar el cumplimiento de uno o varios requisitos reglamentarios con el propósito de lograr la utilización óptima de los terrenos y dirigido hacia el objetivo de poner en práctica el desarrollo urbano compacto; **o en los casos en que un uso no permitido, pero compatible con el carácter esencial del distrito, la aplicación de los requisitos de los reglamentos resulte en la prohibición o restricción irrazonable del disfrute de una pertenencia o propiedad y se le demuestre, a su satisfacción, que dicha dispensa aliviará un perjuicio claramente demostrable**, pudiendo imponer las condiciones que el caso amerite para beneficio o protección del interés público.(énfasis suplido)

La Junta invoca el poder conferido en este artículo para permitir la construcción del edificio de estacionamiento en un distrito ZU-R1, concluyendo que "toda vez que las facilidades del hospital...van encaminadas a brindar mejor servicio, se puede concluir que con el proyecto se lograría la utilización óptima de los terrenos y el desarrollo urbano compacto." Erró al resolver así.

En el caso de autos, la Junta aprobó un uso no permitido al hospital utilizando como criterio la primera parte del citado artículo y concluyó que el proyecto propuesto logra la utilización óptima de los terrenos. El proyecto, como hemos expresado, es un uso no permitido en los solares con zonificación ZU-R1. El artículo 11 dispone que en casos de usos no permitidos, la Junta puede dispensar del cumplimiento de requisitos reglamentarios 1) si la aplicación de éstos resulta en "la prohibición o restricción irrazonable" del disfrute de una propiedad, 2) si el uso no permitido es compatible con el carácter esencial del distrito y 3) si se le demuestra a la Junta "que dicha dispensa aliviará un perjuicio claramente demostrable." No surge del expediente administrativo que la Junta haya evaluado estos criterios al eximir al hospital de cumplir con los requisitos reglamentarios. Procede, por lo tanto, que la Junta evalúe la presente consulta de manera concreta a la luz de estos factores.

Por otro lado, la altura del proyecto propuesto excede la requerida por el Reglamento de Zonificación Especial de Santurce. Los solares en donde se ubicaría el edificio de estacionamiento están sitos en una Zona de Edificabilidad Aislada ZE-A4. El reglamento dispone para esta zona una altura mínima de 4 plantas y una altura máxima en el cuerpo principal de 6 plantas. La altura máxima permitida es de 8 plantas condicionadas a que las dos plantas superiores mantengan un retiro mínimo de la línea de fachada de dos metros.

El edificio de estacionamiento propuesto tendría diez plantas por la Calle San Jorge por lo que no cumple con este requisito reglamentario. La Junta concedió una excepción y autorizó el proyecto con la altura propuesta de 10 plantas. Evaluó el proyecto a la luz de los factores establecidos en el Capítulo de Excepciones del Reglamento de Zonificación Especial de Santurce y concluyó que el edificio de estacionamiento y servicios de salud no afecta la salud, seguridad y bienestar del sector así como tampoco menoscaba el suministro de luz y aire a ninguna estructura ni aumenta el peligro de fuego. Concluyó la Junta que no se había sometido evidencia de que se ocasione reducción o perjuicio a los valores de las propiedades establecidas en áreas vecinas y que la viabilidad, adecuacidad y conveniencia del proyecto se habían demostrado sin lugar a dudas.

Hemos definido el término "excepción" como la autorización para usar la propiedad en cierto modo que de antemano el propio Reglamento de Zonificación admite y tolera, siempre que se cumpla con ciertas condiciones. Junta de Planificación v. J.A.C.L., 109 D.P.R. 210 (1979); Quevedo Segarra v. J.A.C.L., 102 D.P.R. 87 (1974); López v. Junta de Planificación, 80 D.P.R. 646 (1958). La concesión de excepciones es un medio para controlar ciertos usos que no son frecuentes pero que pueden tener efecto adverso en el vecindario. "Se conceden **únicamente en los casos expresamente autorizados por el Reglamento** y siempre sujeto a las condiciones en él prescritas." Quevedo Segarra v. J.A.C.L., supra.

CC-1998-382                    12

El Capítulo 34 del Reglamento de Zonificación de Santurce dispone que la Junta considerará solicitudes de permisos o consultas de ubicación para los usos y construcciones que se indiquen en el Reglamento para determinadas zonas de uso. Dicho reglamento detalla específicamente que usos y construcciones pueden considerarse mediante excepción. Este no incluye en esta lista una construcción de una altura distinta a la establecida para una zona ZE-A4 como es la del caso de autos. La Junta estaba impedida de considerar esta "excepción", pues las excepciones sólo se conceden en los casos **expresamente** autorizados por el Reglamento. Quevedo Segarra v. J.A.C.L., supra. Por lo tanto, erró la Junta al aprobar la consulta de ubicación para la construcción de un edificio de diez plantas.

IV.

Por los fundamentos expresados antes, procede que se deje sin efecto tanto la sentencia dictada por el Tribunal de Circuito de Apelaciones en el caso de autos como la consulta de ubicación aprobada por la Junta de Planificación, y devolver el caso a dicho organismo, para ulteriores procedimientos conforme a lo aquí resuelto. Se dictará sentencia de conformidad.

CC-1998-382                    13
                    EN EL TRIBUNAL SUPREMO DE PUERTO RICO


Asociación Vecinos
del Hospital San Jorge

    Demandantes-Recurrentes

        Vs.                         CC-1998-382    CERTIORARI

United Medical Corporation y
Geronimo Partnership, Etc.

    Demandado-Recurridos


                        SENTENCIA


        San Juan, Puerto Rico, a 18 de enero de 2000.


        Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte de la presente, se deja sin efecto tanto la sentencia dictada por el Tribunal de Circuito de Apelaciones en el caso de autos como la consulta de ubicación aprobada por la Junta de Planificación, y se devuelve el caso a dicho organismo, para ulteriores procedimientos conforme a lo aquí resuelto.

        Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. Los Jueces Asociados señores Rebollo López y Corrada del Río disienten sin opinión escrita. El Juez Asociado señor Negrón García, inhibido.


                        Isabel Llompart Zeno
                    Secretaria del Tribunal Supremo