*707 TEXTO COMPLETO DE LA SENTENCIA
José O. Ortiz Rivera (el recurrente), comparece con recurso de revisión para que este Tribunal revoque la resolución emitida el 8 de julio de 2009 y notificada por el Departamento de Asuntos del Consumidor (DACO). Mediante la resolución recurrida, DACO desestimó la querella del recurrente.
De conformidad con ese dictamen, DACO concluyó que el recurrente no actuó con buena fe en su negocio de compraventa de inmueble a Mora Development, Long Term Property Rental, LLC (los recurridos). DACO concluyó, además, que el recurrente no ejerció oportuna gestión para ser acreedor al reembolso de su depósito.
El 27 de julio de 2009, el recurrente solicitó la reconsideración de la resolución recurrida. Mediante Resolución de 12 de agosto de 2009, notificada el 13 de ese mismo mes y año, DACO declaró No Ha Lugar la solicitud de reconsideración del recurrente.
El 9 de septiembre de 2009, el recurrente presentó su recurso ante este Foro. Los recurridos presentaron un escrito el 15 de septiembre de 2009 y lo acogimos como réplica a la solicitud del recurso.
El recurrente le formula cinco señalamientos de error al DACO:
“(1) Erró DACO al omitir indicar lo testificado por el propio representante de la parte recurrida a los fines de que “Long Term Property Rental, LLC” le pertenecía a Mora Development, S.E.;
(2) Erró DACO en su determinación de hecho número 13 al indicar que la misma era “explicando que deseaba la denegación del préstamo hipotecario ya aprobado...”, ya que no se fundamenta en evidencia sustancial;
(3) Erró DACO en su determinación de hecho número 15 al interpretar que no cumplió el querellante-recurrente con notificar al banco su cambio sustancial en sus ingresos durante los meses que estuvo sin recibir el ingreso de un alquiler comercial;
(4) Erró DACO al determinar que la querellada ejerció su derecho a retener el depósito entregado por el querellante al violar los términos del contrato y omitir información pertinente al financiamiento luego de cuatro meses de advenir en conocimiento de su situación económica, cuando en sus propias determinaciones de hechos reconoce que la querellada-recurrida había notificado al querellante-recurrente que tenía hasta el 3 de agosto de 2008 para efectuar el cierre de dicho departamento;
*708 (5) Erró DACO en sus conclusiones de derecho al determinar que, refiriéndose al querellante, “su proceder de informar a días de realizarse el cierre hipotecario y omitir informar al banco que sus ingresos no son iguales a los notificados en un inicio, no es un acto de buena fe”.
Evaluado el recurso solicitado, el escrito de oposición y el derecho vigente aplicable, resolvemos confirmar la resolución recurrida.
I
En febrero de 2008, el recurrente suscribió junto a Lourdes Avilés Rodríguez, un contrato de opción y compraventa con los recurridos para la compra de un apartamento (Número 2505) en el proyecto Capitolio Plaza del “viejo” San Juan. El precio pactado de la compraventa fue de $535,500.00 de los cuales se dieron $15,000.00 como depósito.
Las partes pactaron que los recurridos confieren “una opción de compra a la Parte Compradora hasta el 29 de febrero del 2008 por el precio de opción de $15,000.00”. El referido contrato añade en una de sus cláusulas que si la “Parte Compradora rehusara concluir la compra bajo los términos de este contrato, dicho depósito será confiscado”. El contrato estipula que la escritura de compraventa sería preparada por los vendedores para llevarse a cabo 30 días a partir de la firma del contrato de opción y compraventa.
En el contrato también estipularon condiciones para el caso en que el recurrente condicionara la compraventa a la obtención de un préstamo hipotecario. Entre esas cláusulas está la de originar el referido préstamo hipotecario “no después de cinco (5) días laborables después de la aceptación de ambas partes”. Además, pactaron que si el préstamo se denegaba porque el recurrente suministró información incorrecta u omitió informar lo necesario para serle otorgado el préstamo, los recurridos podrían retener el depósito como penalidad por el incumplimiento, y por esa razón quedaría sin efecto el término de la opción. En caso de que no se obtuviera el préstamo por causas no imputables al recurrente, entonces se procedería con la devolución del depósito, supra.
Los siguientes hechos trascienden del expediente:
El 30 de abril de 2008, el recurrente radicó en Santander Mortgage Corporation (Santander), una solicitud de préstamo hipotecario. (Exhibit XB, pág. 28). En ese momento habían transcurrido 79 días desde la firma del contrato de opción, a pesar de que las partes pactaron contractualmente que ese evento debía “originarse” no más tarde de 5 días de firmado el contrato de opción.
El 5/6/08 (6 de mayo?), Santander le indicó al recurrente que con el interés de facilitar el “inicio” de su solicitud de préstamo le facturaría por gastos iniciales la cantidad de $295.00. (Exhibit XA, pág. 27). El recurrente pagó por la referida solicitud $295.00 con una tarjeta de crédito VISA el 5/6/08. (Exhibit XC, pág. 29). A esa fecha, el recurrente ya conocía que el alquiler de su inmueble comercial no le estaba produciendo rentas o ingreso.
El 3 de junio de 2009, los recurridos cursaron carta al recurrente advirtiendo los infructuosos intentos en comunicarse con él para citarle a la inspección del apartamento en Capitolio Plaza. Indica que el recurrente tiene conocimiento de que el apartamento tiene permiso de uso y está listo para inspección para otorgar la escritura de compraventa. Además, le indica al recurrente que se le concede hasta el 3 de agosto de 2008 para el “cierre” del negocio de compraventa. Finalmente, le apercibe que de no cumplir con los términos del contrato de compraventa firmado se podrá cancelar administrativamente por abandono. Por consiguiente, la prueba revela que la dilación para el cierre de la compraventa fue atribuible al recurrente. Su comparecencia a una inspección del inmueble el 16 de julio de 2008 y su acción de señalar deficiencias en el inmueble para que fueran corregidas ocurrió al cuarto mes de conocer que no estaba recibiendo ingresos de sus rentas. (Ver Exhibit *709 IX, pág. 25). A esa fecha, no le había informado estos hechos a los recurridos y no existe evidencia de que lo hubiera informado a Santander. El contrato de opción estipulaba el 29 de febrero de 2008 como la fecha para otorgar la escritura.
El 31 de julio de 2008, el recurrente alude a una conversación telefónica con un funcionario de Santander y le informa que “siguiendo sus instrucciones” le notifica por escrito (a Santander) que su ingreso de comisiones por venta de vehículos ha mermado, así como su ingreso por alquiler de una propiedad comercial, ya que llevaba cuatro meses sin cobrar. El recurrente mismo procedió a solicitar de Santander que le descalificara por alegada insuficiencia de ingresos y le denegara su solicitud de préstamo para solicitarle a “Mora Development” (los recurridos) la devolución de su depósito. El recurrente advierte en esa carta que “ya se le hizo la reclamación que corresponde”.
En respuesta a la solicitud del 31 de julio de 2008, el 1 de agosto de ese año, Santander denegó la solicitud del recurrente. El recurrente solicitó la devolución del depósito y los recurridos se negaron. El recurrente entonces acudió al DACO en solicitud del remedio que le fuera desestimado, e inconforme con la determinación administrativa en DACO, acude ante este Tribunal.
n
Como cuestión de umbral, a pesar de que están sujetas a la revisión judicial, la norma establecida es que las decisiones de los organismos administrativos “tienen a su favor una presunción de regularidad y corrección, que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla”. Rivera Concepción v. A.R.P.E., 152 D.P.R. 116, 123 (2000). El Tribunal Supremo de Puerto Rico (TSPR) consistentemente ha reiterado esa norma. García v. Cruz Auto Corp. y Scotiabank, res. el 21 de mayo de 2008, 174 D.P.R._(2008), 2008 J.T.S. 112.
La revisión judicial se circunscribe a determinar si la actuación de la agencia está fundamentada en evidencia sustancial y si no es arbitraria, ilegal, o tan irrazonable que la misma constituye un abuso de discreción. See. 4.5 de la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. see. 2175; Otero v. Toyota, 163 D.P.R. 716, 729 (2005).
La presunción de corrección que acarrea una decisión administrativa, deberá sostenerse a menos que la misma logre ser derrotada mediante la identificación de evidencia en contrario que obre en el expediente administrativo. A.R.P.E. v. J.A.C.L., 124 D.P.R. 858, 864 (1989). Ello así, debido a que los tribunales deben conceder la mayor deferencia a las determinaciones de las agencias sobre asuntos que se encuentren dentro del área de especialidad de éstas. Rivera Concepción v. A.R.P.E., supra.
En cuanto a las determinaciones de hechos realizadas por la agencia administrativa al adjudicar, la norma es que los tribunales apelativos vienen obligados a respetarlas cuando estén sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. See. 4.5, LPAU, supra; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000). Se entiende como evidencia sustancial la prueba relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Rebollo v. Yiyi Motors, 161 D.P.R. 69,76-77 (2004).
El tribunal apelativo no debe realizar una adjudicación independiente de los hechos a base de sus propios criterios, sino que su función se limita a verificar si las determinaciones formuladas por el organismo administrativo efectivamente están sostenidas por la evidencia sustancial en el expediente de la agencia. Si existe más de una interpretación razonable de los hechos, el Tribunal debe respetar la decisión de la agencia recurrida. Asoc. Vec. H. San Jorge v. U. Med. Corp., supra, a las págs. 75-76.
Para concluir que la evidencia en el expediente administrativo no es sustancial, es necesario que la parte *710 recurrente demuestre que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal prueba, hasta que un tribunal no pueda concienzudamente concluir que la evidencia sea sustancial, en vista de la prueba presentada y hasta el punto que se demuestre claramente que la decisión de la agencia no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración. Domínguez v. Caguas Expressway Motors, 148 D.P.R. 387, 397-398 (1999). No basta con alegar que la prueba presentada ante la agencia no sostiene la determinación recurrida. El recurrente tiene el peso de derrotar la presunción de corrección que le asiste a la decisión “administrativa”. Rebollo v. Yiyi Motors, supra.
Cuando obre en el expediente administrativo evidencia sustancial que haya sido considerada en su totalidad, los tribunales apelativos debemos confirmar las determinaciones de hechos realizadas por la agencia. Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 75 (2000). Ya hemos indicado que el TSPR ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión, aunque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a las que la agencia adopta. Otero v. Toyota, supra, a la pág. 731; Adra. de Terrenos v. U.I.E.A.T., 149 D.P.R. 65, 75-76 (1999). De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraría, irrazonable y que se tomó en ausencia de evidencia sustancial. Otero v. Toyota, supra, a la pág. 728.
ni
Las determinaciones de hechos del DACO en este caso son consistentes con la prueba en el récord. Todas están sustentadas en evidencia sustancial del récord. El ejercicio discrecional de adjudicar credibilidad a la prueba recibida en el caso está dentro de los parámetros de razonabilidad.
El primer señalamiento de error no fue cometido y es inconsecuente a la controversia. El recurrente suscribió contrato con Long Term Realty, LLC, pero su carta de 31 de julio de 2008 claramente evidencia que conocía que Mora Development era la compañía constructora que tenía el depósito en controversia. El recurrente evidencia pleno conocimiento de la relación entre ambas entidades.
El segundo señalamiento de error tampoco fue cometido. En la carta de 31 de julio de 2008, el recurrente mismo solicita se le descalifique y se le deniegue el préstamo. Además, en esa carta de 31 de julio de 2008, el recurrente alude a un alegado acuerdo con un funcionario de Santander -mediante previa llamada telefónica-para poder reclamar su depósito a los recurridos, lo que tampoco verifica buena fe. Ese “acuerdo” involucra a Santander para que sea dicha entidad quien deniegue la solicitud del préstamo del recurrente de manera que éste pueda reclamar su depósito a los recurridos. DACO resalta el hecho de que el recurrente fue a inspeccionar el apartamento el 16 de julio de 2008 y señaló una serie de deficiencias para ser corregidas por los recurridos, a pesar de que a ese momento no había informado cambio alguno de su situación económica. Esa conducta resulta conflictiva con la versión de los hechos que el recurrente intima a Santander en su carta de 31 de ese mismo mes y año. Con ello corrobora que la conclusión administrativa de la falta de buena fe del recurrente se fundamenta en la evidencia sustancial del récord. Aunque la palabra “deseo” no aparece en la carta del 31 de julio de 2008, tal y como afirma el recurrente en su señalamiento de error, esa carta claramente revela que la solicitud corresponde a la voluntad del recurrente.
Consolidamos el análisis de la discusión de los señalamientos de error tercero, cuarto y quinto, ya que los mismos no fueron cometidos. El récord presenta evidencia suficiente en derecho para apoyar la determinación administrativa.
A pesar de que el recurrente alega tener derecho a su depósito, es un hecho de que incumplió el contrato en cuestión. Su incumplimiento justifica la “confiscación” del depósito. El recurrente no inició la gestión del préstamo dentro del término pactado. El recurrente no ejerció la opción en el tiempo pactado. El recurrente no solicitó el préstamo en el tiempo pactado. El recurrente no explica la responsabilidad económica de la otra parte *711 compradora. [1]
El recurrente no informó a Santander adecuadamente o correctamente sus ingresos [2] y ello afectó la aprobación de su solicitud. A pesar de que alude que ejerció se derecho a retirar su opción oportunamente, nada en el contrato apoya su contención. Lo que verifica el récord es que la fecha del cierre de la compraventa se extendió por razón de que no se le conseguía para la inspección del apartamento y porque el recurrente eventualmente visitó el mismo en julio de 2008 y señaló una serie de “deficiencias” a ser corregidas, aunque ya desde abril de 2008 conocía que su situación económica era diferente a lo informado. Esa conducta fue la que indujo a los recurridos a confiar que el cierre se culminaría en otra fecha.
Por su parte, las conclusiones de derecho que formula el DACO, en relación a las obligaciones contractuales aplicables, se basan en la ley y el derecho aplicable vigente.
Si las interpretaciones de la agencia especializada son razonables y consistentes con el propósito legislativo que inspiran los estatutos directivos, el tribunal debe abstenerse de intervenir con ellas. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881, 889 (1999). Al aplicarle a este caso las normas de revisión judicial de una decisión administrativa, concluimos que la resolución de DACO, aunque en el ejercicio de una interpretación contractual, fue razonable y esencialmente correcta, por lo que no se requiere la intervención de este Tribunal.
Era responsabilidad del recurrente evidenciar prejuicio, error, irrazonabilidad, ilegalidad o parcialidad en el dictamen recurrido, o probar con evidencia sustancial que le asiste la razón. No lo ha hecho. El recurso de revisión administrativa no existe para que este Tribunal sustituya el criterio de credibilidad adjudicado por la agencia.
IV
Por los fundamentos antes mencionados, se confirma la Resolución recurrida.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2010 DTA 15

. No se conoce si la otra parte compradora podía asumir económicamente la responsabilidad de la compraventa.

. Si el recurrente presentó su solicitud de préstamo el 30 de abril de 2008 y a 9 de junio de 2008 suscribió a su inquilino que no había recibido el ingreso-mensualidad de abril, mayo y junio de ese mismo año, hay que preguntarse primero qué fue lo que informó relacionado a sus ingresos en su solicitud. En segundo lugar, si informó correctamente que no recibía ese ingreso, entonces su situación económica no podía ser diferente como finalmente alega. Todo esto verifica que el DACO adjudicó adecuadamente el hecho de que el recurrente no ofreció información correcta en su solicitud de crédito como era su obligación contractual, y con ello contribuyó a que se le denegara su solicitud y que los recurridos no pudieran tener para venta durante los meses en controversia el apartamento en cuestión. Según los términos contractuales, eso representaba razón suficiente para confiscar el depósito en controversia.