Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| | | |
|---|---|---|
| DIOSDADO GONZÁLEZ RIVERA<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrido | KLRA202400191 | *REVISIÓN ADMINISTRATIVA* procedente de la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación<br><br>Caso núm.:<br>PA-535-23<br><br>Sobre:<br>Revisión y petición de bonificaciones perdidas y por daños y perjuicios |

Panel integrado por su presidente, el juez Bermúdez Torres, el juez Adames Soto y la juez Aldebol Mora.

Aldebol Mora, Juez Ponente

# S E N T E N C I A

En San Juan, Puerto Rico, a 11 de julio de 2024.

Comparece ante nos, por derecho propio, la parte recurrente, Diosdado González Rivera, mediante un recurso intitulado *Mandamus en Auxilio por Daños y Perjuicio en Petición de Restitución de Bonificaciones*, el cual calificamos como una revisión judicial, y solicita que revisemos la determinación emitida por la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación el 7 de marzo de 2024, notificada el 12 del mismo mes y año. Mediante el referido dictamen, en esencia, la agencia denegó la solicitud de remedio administrativo promovida por el recurrente.

Por los fundamentos que expondremos a continuación, se confirma la determinación administrativa recurrida. Veamos.

**I**

El 23 de mayo de 2023, recibida el 5 de junio del mismo año, Diosdado González Rivera (González Rivera o recurrente) instó una

*Solicitud de Remedio Administrativo* ante la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR o recurrido).[1] En la misma, González Rivera indicó que, el 27 de enero de 2023, fue trasladado de la Institución Correccional Ponce Principal a la Institución Correccional Ponce Adultos 1000. Alegó que, debido a dicho traslado, se interrumpió su plan institucional y se afectaron sus bonificaciones, ajustes, trabajo como barbero y progreso académico como estudiante becado en el programa de ingeniería electrónica de Caribbean University. Según adujo, la institución a la cual lo trasladaron estaba destinada para reclusos de custodia mediana y no albergaba a confinados clasificados con custodia mínima, a la cual pertenecía en ese momento. Arguyó que la administración de la mencionada institución no quería mezclar en los salones de clase a los confinados de custodia mínima con los de custodia mediana –los cuales representaban un noventa y cinco por ciento (95%) de la población correccional–, razón por la cual no pudo comenzar a cursar su segundo trimestre universitario. Sostuvo que nunca se negó a recibir los servicios académicos y que perdió dicho trimestre por razones ajenas a su voluntad. Describió ser un estudiante comprometido con su plan institucional y afirmó mantener una excelente conducta, con un excelente ajuste y progreso en el área académica, así como laboral.

En su petitorio, González Rivera reiteró que no fue el culpable de perder su segundo trimestre universitario, por lo cual solicitó que se impartieran instrucciones al área de sociales para que se le otorgara la correspondiente bonificación por el tiempo de estudio perdido. Asimismo, solicitó que se le instruyera a la administración de la Institución Correccional Ponce Adultos 1000 en miras de

---

[1] Expediente administrativo, págs. 2-3.

buscar una alternativa o solución para poder recibir, en el trimestre de agosto de 2023, todos los servicios educativos que, por derecho, como confinado de custodia mínima para aquel entonces, le correspondían. Por último, le pidió ayuda a la Secretaria del DCR, Ana Escobar Pabón, para que su plan institucional no se viera afectado y solicitó que interviniera para que su derecho a la educación, brindada por Caribbean University, tampoco se afectara.

Luego de varios trámites procesales, el 7 de marzo de 2024, notificada el 12 del mismo mes y año, la División de Remedios Administrativos del DCR emitió la *Resolución* que nos ocupa, mediante la cual atendió todos los reclamos presentados por González Rivera y, en esencia, denegó la solicitud de remedio administrativo promovida por este.[2] En particular, la agencia recurrida desglosó las siguientes determinaciones de hecho:

1. El recurrente present[ó] [una] Solicitud de Remedios Administrativos el 5 de junio de 2023 ante el Evaluador de Remedios Administrativos, Limarys Lugo Pag[á]n[,] de la Oficina de Ponce. En su escrito[,] solicit[ó] que se continúe[n] sus estudios otorgados por Caribbean University y trabajo de barbería[,] los cuales realizaba antes de ser trasladado a la Institución Correccional Adultos Ponce 1000.

2. El 6 de junio de 2023[,] se hizo [una] Notificación dirigida al Sr. Elvin Alicea y/o V[í]ctor Torres, Superintendentes [de la] Institución Correccional Adultos Ponce 1000.

3. El 9 de noviembre de 2023[,] se recib[ió] la respuesta de la Sra. Marline Torres Santiago, Técnico Sociopenal Principal [de la] Institución Correccional Adulto Ponce 1000.

4. El 9 de noviembre de 2023[,] se h[izo] la entrega al recurrente del Recibo de Respuesta.

5. El 26 de diciembre de 2023, el recurrente[,] inconforme con la respuesta emitida, presentó [una] Solicitud de Reconsideración ante el Coordinador Regional de Remedios Administrativos. En síntesis, arguy[ó] que no est[aba] de acuerdo con la respuesta recibida[;] que la solicitud de remedios administrativos no fue referido a la Sra. Marlene Torres[;] la dilación de la contestación[;] el no ser

---

[2] Expediente administrativo, págs. 11-13.

integrado al curso [de] Ingeniería Electrónica[;] y no ser asignado a realizar labores.[3]

Evaluados los reclamos de González Rivera, el organismo administrativo concluyó que: (1) González Rivera no pudo ser asignado al área laboral de la institución penal a la que fue trasladado porque no había plazas disponibles y todavía no ha surgido una; (2) el Comité de Clasificación y Tratamiento acordó reclasificar a González Rivera de custodia mínima a mediana; (3) González Rivera no contaba con los prerrequisitos necesarios para ser matriculado en el curso de Ingeniería Electrónica; (4) del área escolar se informó que, ante la actualización de matrícula para el año académico 2024-25, González Rivera sería matriculado en agosto del año corriente para que se beneficiara de la totalidad de los cursos; (5) González Rivera fue orientado sobre lo anterior; (6) González Rivera participaba en el curso de Jardinería Comercial y Residencial. Específicamente, la agencia determinó lo siguiente:

[…]

Al llegar a la Institución Correccional Adultos Ponce 1000[,] no pudo ser asignado en el área laboral ya que no había plazas disponibles[.] [S]obre el área de estudio[,] este no contaba con los pre requisitos necesarios para ser añadido en el grupo del curso de Ingeniería Electrónica. Por esta razón[,] no pudo ser matriculado para continuar el curso.

El 9 de febrero de 2024[,] el Comité de Clasificación y Tratamiento se reunió en Evaluación Plan Institucional y acordó reclasificar al recurrente de custodia mínima a mediana, por salir incurso e[l] 11 de enero de 2024 en la querella disciplinaria número 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, código 129 (posesión de sustancias controladas, se prohíbe la posesión, uso, venta o distribución de sustancias controladas[)] y código 139 (estar bajo los efectos de alcohol o cualquier tipo de bebida embriagante, sustancia[s] controladas o medicamento no autorizado[)]. El 6 de enero de 2024[,] finaliz[ó] las terapias de Transformación de Patrones Adictivos. Sobre el aspecto laboral[,] todavía no ha surgido una plaza en la cual se le pueda ubicar.

Recibimos comunicación del área escolar[,] la cual nos indic[a] que[,] para el año académico 2024-2025[,] se actualizan las matrículas con los nuevos estudiantes

---

[3] Expediente administrativo, pág. 11.

para el fiel cumplimiento de los cursos ocupacionales y académicos. Se nos informó que será matriculado en agosto para que comience el año académico como corresponde para que se pueda beneficiar de la totalidad del curso. Sobre este particular[,] el 12 de febrero de 2024[,] se le orient[ó] al recurrente. Actualmente[,] participa en el Curso de Jardinería Comercial y Residencial.

En cuanto a la dilación de la respuesta del área concernida, se realizó el seguimiento debido por parte de la Oficina de Remedios Administrativos de Ponce para que cursaran la contestación y[,] así[,] poder continuar el proceso.[4]

Inconforme, el 1 de abril de 2024, recibida en la Secretaría de este Foro el 5 del mismo mes y año, la parte recurrente presentó el presente recurso de revisión judicial. En su escrito, el recurrente impugna la determinación administrativa antes indicada y, entre otros, nos solicita que la dejemos sin efecto.

Después de varias incidencias procesales, en cumplimiento con nuestra *Resolución* del 29 de abril de 2024, la parte recurrida compareció, en lo pertinente, mediante *Escrito en Cumplimiento de Resolución* el 30 de mayo de 2024.

Con el beneficio de la comparecencia de las partes, así como la copia certificada del expediente administrativo, procedemos a resolver.

**II**

**A**

Sabido es que los tribunales apelativos debemos otorgar amplia deferencia a las decisiones emitidas por las agencias administrativas, puesto que estas cuentan con vasta experiencia y pericia para atender aquellos asuntos que se les han sido delegados por la Asamblea Legislativa. *Otero Rivera v. Bella Retail Group, Inc. y otros*, 2024 TSPR 70, resuelto el 24 de junio de 2024; *Hernández Feliciano v. Mun. Quebradillas*, 211 DPR 99 (2023); *OEG v. Martínez Giraud*, 210 DPR 79 (2022); *Super Asphalt v. AFI y otro*, 206 DPR

---

[4] Expediente administrativo, pág. 12.

803, 819 (2021); *Graciani Rodríguez v. Garaje Isla Verde*, 202 DPR 117, 126 (2019); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35 (2018). Es por ello, que, tales determinaciones suponen una presunción de legalidad y corrección que a los tribunales nos corresponde respetar, mientras la parte que las impugne no presente prueba suficiente para derrotarlas. *Íd.*; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216 (2012). No obstante, tal norma no es absoluta. Es por ello que nuestro Máximo Foro ha enfatizado que no podemos imprimirle un sello de corrección, so pretexto de deferencia a las determinaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, 2024 TSPR 29, 213 DPR ___ (2023).

En *Torres Rivera v. Policía de PR*, 196 DPR 606, 628 (2016), nuestro Tribunal Supremo resumió las normas básicas en torno al alcance de la revisión judicial de la siguiente forma:

> [L]os tribunales deben deferencia a las decisiones de una agencia administrativa, pero ésta cederá cuando: (1) la determinación administrativa no está basada en evidencia sustancial; (2) el ente administrativo erró en la aplicación o interpretación de las leyes o reglamentos que se le ha encomendado administrar; (3) el organismo administrativo actuó arbitraria, irrazonable o ilegalmente, realizando determinaciones carentes de una base racional, o (4) la actuación administrativa lesionó derechos constitucionales fundamentales. Es importante destacar que si el tribunal no se encuentra frente a alguna de esas situaciones, aunque exista más de una interpretación razonable de los hechos, procede que se valide la interpretación que realizó la agencia administrativa recurrida. *Íd.* Véase, además, *Voilí Voilá Corp. et al. v. Mun. Guaynabo*, supra, y *Super Asphalt v. AFI y otro*, supra, pág. 819.

El criterio rector bajo el cual los tribunales deben revisar las decisiones administrativas es el criterio de razonabilidad. *OEG v. Martínez Giraud*, supra; *Super Asphalt v. AFI y otro*, supra, pág. 820; *Graciani Rodríguez v. Garaje Isla Verde*, supra, pág. 127; *Torres Rivera v. Policía de PR*, supra, pág. 626. Bajo este criterio, se limita la revisión judicial a dirimir si la agencia actuó de forma arbitraria

o ilegal, o de manera tan irrazonable que su actuación constituya un abuso de discreción. *Íd.*

Bajo este supuesto, la Sección 4.5 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 38-2017, 3 LPRA sec. 9675 (LPAU), estableció "el marco de revisión judicial de las determinaciones de las agencias administrativas". *Otero Rivera v. Bella Retail Group, Inc. y otros*, supra; *Rolón Martínez v. Supte. Policía*, supra, pág. 35. La intervención del tribunal se limita a tres áreas, a saber: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hecho que realizó la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo visto en su totalidad, y (3) si las conclusiones de derecho del ente administrativo fueron correctas. *Íd.,* págs. 35-36; *OEG v. Martínez Giraud*, supra; *Torres Rivera v. Policía de PR*, supra, págs. 626-627; *Batista, Nobbe v. Jta. Directores*, supra, pág. 217. Nuestro Máximo Foro ha expresado que esta intervención "debe ocurrir cuando la decisión administrativa no se fundamente en evidencia sustancial o cuando la agencia se equivoque en la aplicación de la ley". *Rolón Martínez v. Supte. Policía*, supra, pág. 36. Siendo así, aquellas determinaciones de hechos formuladas por el ente administrativo deberán sostenerse cuando estén basadas en evidencia sustancial que surja del expediente administrativo considerado en su totalidad. *Íd.; OEG v. Martínez Giraud,* supra; *Super Asphalt v. AFI y otro,* supra.

Por otro lado, las determinaciones de derecho pueden ser revisadas en su totalidad. Sec. 4.5 de la LPAU, 3 LPRA sec. 9675; *Rolón Martínez v. Supte. Policía*, supra, pág. 36; *Torres Rivera v. Policía de PR*, supra, pág. 627. No obstante, los tribunales deberán darles peso y deferencia a las interpretaciones que la agencia realice de aquellas leyes particulares que administra. *Íd.*

El Tribunal Supremo de Puerto Rico ha dispuesto que la deferencia que le deben los tribunales a la interpretación que haga el ente administrativo sobre aquellas leyes y reglamentos que le corresponde poner en vigor, cede si la agencia: "(1) erró al aplicar la ley; (2) actuó arbitraria, irrazonable o ilegalmente, o (3) lesionó derechos constitucionales fundamentales". *Torres Rivera v. Policía de PR*, supra, págs. 627-628; *OEG v. Martínez Giraud*, supra. Finalmente, nuestra más Alta Curia ha expresado que, conforme a lo anterior, el criterio administrativo no podrá prevalecer en aquellas instancias donde la interpretación estatutaria realizada por una agencia provoque un resultado incompatible o contrario al propósito para el cual fue aprobada la legislación y la política pública que promueve. Así, "la deferencia judicial al *expertise* administrativo, concedido cuando las agencias interpretan la ley, tiene que ceder ante actuaciones que resulten irrazonables, ilegales o que conduzcan a la comisión de una injusticia". *OEG v. Martínez Giraud*, supra, pág. 11.

**B**

La Sección 19 del Artículo VI de nuestra Constitución establece que será política pública "reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de l[a]s [personas] delincuentes para hacer posible su rehabilitación moral y social". Art. VI, Sec. 19, Const. ELA, LPRA, Tomo I. A raíz de ello, el Artículo 5, inciso f, del Plan de Reorganización Núm. 2 de 21 de noviembre de 2011, según enmendado, conocido como el *Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011*, 3 LPRA Ap. XVIII, Art. 5(f) (Plan de Reorganización Núm. 2-2011), le reconoce al DCR la facultad y deber de "ampliar los programas de educación y trabajo para que impacten a toda la población correccional que

interese participar y asegure la aplicación correcta de los sistemas de bonificación por trabajo y estudio que permitan las leyes aplicables".

Conforme a ello, los Artículos 11 y 12 del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Arts. 11 y 12, establecen el modo en que se deben computar las bonificaciones, ya sea por buena conducta y asiduidad o por estudio, trabajo y servicios. En lo aquí atiente, el Artículo 12 del mencionado estatuto dispone, en esencia, que a toda persona sentenciada a cumplir una pena de reclusión se le podrán conceder bonificaciones a razón de no más de cinco (5) días por cada mes en que esté empleada en alguna industria o que esté realizando estudios como parte de un plan institucional, bien sea en la libre comunidad o en el establecimiento penal donde cumple su sentencia, y preste servicio a la institución correccional durante el primer año de reclusión. Asimismo, por cada año subsiguiente, podrá abonarse hasta siete (7) días por cada mes. Ahora bien, si la prestación de trabajo o servicios por la persona integrante de la población correccional o liberada por la Junta de Libertad Bajo Palabra fuere de labores agropecuarias, el Secretario o Secretaria del DCR deberá conceder bonificaciones mensuales hasta un monto no mayor de siete (7) días durante el primer año de cumplimiento de su sentencia y hasta un monto no mayor de diez (10) días mensuales durante los periodos de cumplimiento de su sentencia subsiguientes al primer año. Dicho articulado aclara que las bonificaciones antes mencionadas podrán efectuarse durante el tiempo en que cualquier persona acusada de cometer cualquier delito hubiere permanecido privada de su libertad, sujeto a lo dispuesto en dicho artículo.

De otro lado, el Artículo 13 del Plan de Reorganización Núm. 2-2011, 3 LPRA Ap. XVIII, Art. 13, establece que el comportamiento de la persona integrante de la población correccional constitutivo de

buena conducta dará lugar a la concesión y disfrute de bonificaciones, conforme al Artículo 11 del precitado estatuto. Sin embargo, todo acto de indisciplina de carácter recurrente, constante y reincidente será castigado con la rebaja o la cancelación de las bonificaciones por buena conducta. Véase, Reglamento Interno de Bonificación por Buena Conducta, Trabajo, Estudio y Servicios Excepcionales Meritorios del 3 de junio de 2015.

Esbozada la norma jurídica, procedemos a aplicarla al recurso ante nos.

**III**

En síntesis, el recurrente sostiene en su recurso que la agencia recurrida incidió al no atender todo lo reclamado por este en su petitorio de remedio administrativo. Plantea que la información o los fundamentos que el organismo administrativo utilizó en el dictamen recurrido erran incorrectos.

De una lectura de la *Solicitud de Remedio Administrativo*, así como del recurso ante nos, se desprende que fueron varios los reclamos presentados por el recurrente ante la agencia concerniente. Específicamente, la parte recurrente solicitó: (1) el cumplimiento con su plan institucional como confinado de custodia mínima, en ese momento; (2) la reinstalación de sus bonificaciones y ajustes que se vieron interrumpidos por su traslado; (3) los beneficios, privilegios y servicios que le corresponden por ser, en ese momento, de custodia mínima; (4) una solución a la pérdida de su trabajo como barbero en la institución pasada; (5) una solución o alternativa concreta para reanudar los cursos conducentes a su grado asociado en ciencias en tecnología en ingeniería electrónica del trimestre académico; (6) una bonificación por haber perdido los cursos del trimestre de enero 2023 a causa de su traslado y porque, según alegó, en la institución no querían mezclar a los confinados de custodia mínima con los de custodia mediana en los salones de clase.

Según esbozamos, luego de evaluar la solicitud de remedios administrativos instada por el recurrente, el DCR concluyó que: (1) González Rivera no pudo ser asignado al área laboral de la institución penal a la que fue trasladado porque no había plazas disponibles y todavía no ha surgido una; (2) el Comité de Clasificación y Tratamiento acordó reclasificar a González Rivera de custodia mínima a mediana; (3) González Rivera no contaba con los prerrequisitos necesarios para ser matriculado en el curso de Ingeniería Electrónica; (4) del área escolar se informó que, ante la actualización de matrícula para el año académico 2024-25, González Rivera sería matriculado en agosto del año corriente para que se beneficiara de la totalidad de los cursos; (5) González Rivera fue orientado sobre lo anterior; (6) González Rivera participaba en el curso de Jardinería Comercial y Residencial.

La parte recurrente argumenta que, cuando fue trasladado a la institución correccional en la que se encuentra actualmente, había plazas de trabajo disponibles, toda vez que el módulo de vivienda asignado estaba vacío, lo cual significaba que había vacantes en el área laboral. Sobre el área educativa, arguye que fue confirmado por gerenciales de Caribbean University para continuar en el curso de Ingeniería Electrónica; adicionalmente, había obtenido buenas calificaciones en su primer semestre en dicho curso. Además, afirma que le informaron sobre el curso que tomaría en el semestre académico que comenzará en el mes de agosto. En cuanto al curso de Jardinería Comercial y Residencial, aclara que este únicamente tuvo una duración de diez (10) días y ya había culminado.

Asimismo, el recurrente enfatiza que la agencia no resolvió sus reclamos porque, actualmente, su plan institucional se encuentra totalmente detenido, específicamente lo relacionado al área educativa y laboral, así como sus bonificaciones. Por otro lado,

desiste de los reclamos dirigidos a los privilegios que obtenía por encontrarse en custodia mínima, toda vez que ahora se encuentra en custodia mediana. No obstante, exige que se le restituya la bonificación perdida de estudio y trabajo desde el 27 de enero de 2023, a raíz de su traslado de institución carcelaria. A su vez, solicita que el DCR le otorgue una plaza de trabajo, fuera o dentro del área de vivienda, en labores de cocina, mantenimiento, barbería o lo que esté disponible, ya que asegura que hay puestos vacantes. También desea ser matriculado nuevamente en la Caribbean University.

Sabido es que el DCR regula los programas de bonificación en virtud de los poderes que le fueron delegados. Plan de Reorganización de Núm. 2-2011, *supra.* Consecuentemente, nuestra función apelativa queda reducida a revisar que la parte recurrida actuara dentro del marco de la facultad delegada por las leyes y reglamentos que administra. En otras palabras, la revisión judicial de decisiones administrativas se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción. De igual forma, este Foro apelativo, confrontado con más de una interpretación razonable de hechos, adoptaremos la interpretación del organismo administrativo, conforme a la deferencia que estos merecen por su pericia y experiencia especializada de los asuntos que les son encomendados. *López Echevarría v. Adm. Sist. Retiro*, 168 DPR 749, 752 (2006); *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 DPR 70 (2000).

En esencia, en el caso de autos, nos encontramos ante dos posturas contradictorias. Por un lado, la agencia recurrida sostiene que todos los reclamos del recurrente se atendieron. En específico, alega que este no contaba con los prerrequisitos para ser matriculado en el curso de Ingeniería Electrónica, pero que será

matriculado en Caribbean University en agosto de este año para continuar con sus bonificaciones en el área educativa. Sobre las bonificaciones en el ámbito laboral, el organismo administrativo afirma que, actualmente, no tiene plazas disponibles para ello. Por otro lado, el recurrente insiste en que cumplía con los prerrequisitos para ser partícipe del mencionado curso y deseaba ser matriculado en él. Igualmente, asegura que hay plazas de trabajo disponibles.

Examinada con detenimiento la totalidad de la copia certificada del expediente administrativo, así como los documentos que obran en el expediente ante nos, colegimos que la parte recurrente no señala evidencia en el expediente administrativo que nos permita variar la determinación de la agencia. Ante ese escenario, debido a la amplia discreción que poseen las autoridades carcelarias para implementar los reglamentos que administran, y ante la falta de evidencia sustancial que nos permita concluir contrario a las determinaciones de hecho consignadas en la *Resolución* recurrida, procede que confirmemos.

En mérito de lo antes expuesto, sostenemos la determinación agencial recurrida. Nada en el expediente de autos sugiere que el pronunciamiento que atendemos haya resultado de un ejercicio arbitrario atribuible al DCR. Por tanto, toda vez que el recurrente no derrotó la presunción de corrección de la *Resolución* que nos ocupa, confirmamos la determinación administrativa recurrida.

**IV**

Por los fundamentos que anteceden, confirmamos la determinación administrativa recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones