

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Iniciativa para un Desarrollo Sustentable (IDS) y otros<br><br>Recurridos<br><br>v.<br><br>Junta de Planificación de Puerto Rico, Representada por su Presidente, Rubén Flores Marzán y otros<br><br>Peticionarios | Certiorari<br><br>2012 TSPR 110<br><br>185 DPR ____ |

Número del Caso: CC-2012-21

Fecha: 29 de junio de 2012

Tribunal de Apelaciones:

      Región Judicial de San Juan Panel I

Oficina del Procurador General:

      Lcdo. Luis R. Román Negrón
      Procurador General

      Lcda. Valerie Díaz Aponte
      Procuradora General Auxiliar

Abogado de la Parte Recurrida:

      Lcdo. Luis José Torres Asencio

Materia: Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Iniciativa para un Desarrollo
Sustentable (IDS) y otros

     Recurridos

         v.

Junta de Planificación de
Puerto Rico, Representada por
su Presidente, Rubén Flores
Marzán y otros

     Peticionarios

*Certiorari*

CC-2012-0021

SENTENCIA

En San Juan, Puerto Rico, a 29 de junio de 2012.

Comparece ante nos la Junta de Planificación de Puerto Rico, *et al.*, y nos solicita que revoquemos una Resolución emitida por el Tribunal de Apelaciones el 16 de diciembre de 2011. Mediante esta, el foro apelativo intermedio declaró Ha Lugar una Moción en Auxilio de Jurisdicción presentada por Iniciativa para un Desarrollo Sustentable (en adelante I.D.S. o los recurridos), lo cual tuvo el efecto de paralizar todo procedimiento administrativo en cuanto a la solicitud y concesión de permisos de desarrollo o construcción en el área conocida como la Reserva Natural del Corredor Ecológico del Noreste (en adelante R.C.E.N.).

Evaluada la controversia entre las partes, resolvemos que el Tribunal de Apelaciones erró al declarar Ha Lugar la Moción en Auxilio de Jurisdicción presentada por I.D.S. ante ese foro. Ello toda vez que la referida moción no cumplió con los estándares jurisprudenciales necesarios para emitir una Orden de Paralización en Auxilio de Jurisdicción Apelativa.

I

El Corredor Ecológico del Noreste (en adelante C.E.N.) es una zona de terrenos que consta de una superficie aproximada de tres mil cincuenta y siete (3,057) cuerdas de terreno entre los municipios de Fajardo y Luquillo. Por años varias agencias federales y estatales han reconocido esta zona como una de alto valor ambiental para Puerto Rico.

La controversia del caso de autos tiene su génesis específicamente luego de la aprobación el 4 de octubre de 2007 de la Orden Ejecutiva OE-2007-37, en la cual se le ordenó a la Junta de Planificación de Puerto Rico (en adelante J.P.) a establecer la Reserva Natural del C.E.N. (en adelante R.C.E.N.) y al Departamento de Recursos Naturales y Ambientales (en adelante D.R.N.A.) a adquirir los terrenos que componen esa área.

A tenor con esa Orden, la J.P. emitió el 6 de febrero de 2008 la Resolución PU-02-24(23) mediante la cual se creó, designó y delimitó la R.C.E.N. Esta Resolución fue

posteriormente aprobada el 24 de abril de 2008 mediante la Orden Ejecutiva OE-2008-22. Debido a ciertos defectos procesales y errores de notificación durante el proceso de adopción, la referida Resolución fue dejada sin efecto por la J.P. el 21 de octubre de 2009.

Días después, el 30 de octubre de 2009 el Gobernador de Puerto Rico, Hon. Luis G. Fortuño Burset emitió la Orden Ejecutiva OE-2009-42 que ordenó a la J.P. a designar un Área de Planificación Especial del C.E.N. (A.P.E.C.E.N.) la cual debía incluir en su interior una reserva natural. También se revocó la Orden Ejecutiva OE-2007-37 y se le ordenó a la J.P. que tomara en consideración las recomendaciones del D.R.N.A. en cuanto a los terrenos que debían ser protegidos, conservados o restaurados para la eventual creación de la reserva natural dentro del A.P.E.C.E.N. Finalmente, se le ordenó a la J.P. que adoptara un Plan de Usos y Reglamento de Calificación Especial para el área, con el fin de lograr un adecuado balance entre la protección del ambiente y el desarrollo ecoturístico de la región.

Luego de varias incidencias, el 18 de enero de 2011 se publicaron anuncios de vista pública sobre la propuesta de adopción de un Plan y Reglamento sobre los terrenos en controversia. Posteriormente, varios ciudadanos e I.D.S. cursaron comunicaciones escritas a la J.P. en las cuales solicitaron que se suspendiera y pospusiera la vista

pública anunciada. Consideradas las comunicaciones, el 4 de febrero de 2011 la J.P. las declaró No Ha Lugar y determinó que la vista pública se celebraría a las 10:00am del día siguiente.

La referida vista fue presidida por la licenciada Rosalía Cruz Niemiec. Durante la audiencia se documentó el registro de visitantes y la cantidad de deponentes. El 30 de marzo de 2011 la Lcda. Cruz Niemiec rindió su informe, el cual incluyó un análisis de comentarios recibidos durante la vista pública.

Así las cosas, el 13 de abril de 2011 la J.P. presentó ante la Oficina de Gerencia de Permisos (en adelante O.G.Pe.) una Solicitud de Determinación de Cumplimiento Ambiental Vía Exclusión Categórica sobre el propuesto Plan y Reglamento para el A.P.E.G.R.N. Dicha solicitud fue aprobada por la O.G.Pe.

Posteriormente, el 16 de mayo de 2011 la J.P. emitió la Resolución Número PU-002-CEN-24(23) en la cual adoptó la designación del A.P.E.G.R.N. y, entre otras cosas, adoptó el Plan y Reglamento de Calificación Especial para esa zona. El 28 de junio de 2011, el Gobernador de Puerto Rico emitió la Orden Ejecutiva OE-2011-026 mediante la cual aprobó el proceder de la J.P. por cumplir con la política pública establecida mediante la anterior Orden Ejecutiva.

Inconforme con todo este proceder administrativo, la parte recurrida de epígrafe presentó el 28 de julio de 2011

un recurso de revisión judicial ante el Tribunal de Apelaciones. En este cuestionó el proceder de las agencias concernidas, particularmente en cuanto a la determinación de cumplimiento ambiental mediante exclusión categórica.

Luego de varios trámites procesales, el 7 de noviembre de 2011 I.D.S. presentó una Moción en Auxilio de Jurisdicción ante el foro apelativo intermedio en la cual solicitó la paralización de todo trámite relacionado a la solicitud de permisos, licencias y/o autorizaciones de cualquier índole dentro de los terrenos de la R.C.E.N. Argumentó, **escuetamente**, que se sufriría un irreparable daño ambiental si no se paralizaban los procedimientos antes descritos. El 9 de noviembre de 2011, la J.P. se opuso a la referida moción.

Posteriormente, el Tribunal de Apelaciones declaró Con Lugar la moción presentada por I.D.S. el 16 de diciembre de 2011. A tales efectos, emitió una Orden de Paralización de todo trámite administrativo en cuanto a los terrenos del R.C.E.N. mientras ese foro apelativo dilucidaba los méritos del caso de autos.

Inconformes, la J.P. recurrió mediante recurso de *certiorari* ante este Tribunal el 17 de enero de 2012 y argumentó la comisión del siguiente error:

> **Erró el Tribunal de Apelaciones al paralizar todo trámite administrativo relacionado a la solicitud de concesión de permisos de desarrollo y/o construcción de terrenos presente o futura, mientras se dilucida la presente causa, en el**

**área comprendida en la llamada reserva natural del corredor ecológico del noreste (CEN) de 2008 incluida en el APEGRN tras la adopción de la Resolución P4-002-CEN-24(23) por la Junta de Planificación, mientras dilucida el Recurso de Revisión que fue presentado ante sí.**

La J.P. acompañó el recurso con una Moción en Auxilio de Jurisdicción en la cual planteó que se afectaría el interés público con la paralización de los procedimientos administrativos dentro del R.C.E.N. y que mediante el recurso de *certiorari* presentaba un caso con altas probabilidades de prevalecer en los méritos.

Atendida la moción, el 19 de enero de 2012 procedimos a declararla Ha Lugar, dejando así sin efectos la Orden de Paralización emitida por el Tribunal de Apelaciones. A su vez, emitimos a la parte recurrida de epígrafe una Orden para que mostrara causa por la cual no debíamos revocar la Resolución del foro apelativo intermedio.

I.D.S. ha comparecido y, contando con el beneficio de los escritos de *amicus curiae* presentados por el Colegio de Arquitectos y Arquitectas Paisajistas de Puerto Rico, la Sociedad Puertorriqueña de Planificación, el Reverendo Edward Rivera Santiago y el Monseñor Eusebio Ramos Morales, estamos en posición de resolver sin ulterior trámite y conforme intimado.

II

Como hemos discutido recientemente, una moción en auxilio de jurisdicción "es, en esencia, un llamado a la

utilización del poder inherente que tiene todo tribunal para constituir los remedios necesarios que hagan efectiva su jurisdicción y que eviten fracasos en la administración de la justicia". *García López v. E.L.A.*, res. 9 de abril de 2012, 185 D.P.R. ___ (2012), 2012 T.S.P.R. 69, pág. 6, 2012 J.T.S. 82. Por ende, se trata de un mecanismo que va dirigido a la discreción de los tribunales para proveer remedios en equidad similares al entredicho provisional y al *injunction* preliminar. *Pantoja Oquendo v. Mun. de San Juan*, 182 D.P.R. 101, 109 (2012).

Es indudable la facultad de los tribunales apelativos en nuestro ordenamiento para emitir órdenes en equidad como producto de una moción en auxilio de jurisdicción. A esos efectos, la Regla 79 del Tribunal de Apelaciones en su inciso (A) establece, que:

> (A) Para hacer efectiva su jurisdicción en cualquier asunto pendiente ante sí, el Tribunal de Apelaciones podrá expedir cualquier orden provisional, la cual será obligatoria para las partes en la acción, sus oficiales, agentes, empleados(as) y abogados(as), y para aquellas personas que actúen de acuerdo o participen activamente con ellas y que reciban aviso de la orden mediante cualquier forma de notificación. 4 L.P.R.A. Ap. XXII-B R.79.[1]

---

[1] Este Tribunal también está facultado para expedir órdenes en auxilio de su jurisdicción apelativa. A tales efectos, la Regla 28 de este foro establece que:

> (a) El Tribunal podrá expedir una orden provisional en auxilio de su jurisdicción cuando sea necesario hacer efectiva su jurisdicción en un asunto pendiente ante su consideración.
>
> A los fines de esta regla, se entenderá que el Tribunal atenderá, sin sujeción al trámite ordinario, cualquier asunto relacionado con el recurso presentado o pendiente para evitar alguna consecuencia adversa que afecte su

En cuanto a la utilización de este mecanismo extraordinario, hemos establecido claramente que el remedio que ofrece esta Regla es uno "excepcional de trascendental importancia en **casos donde existan situaciones de verdadera emergencia**". *Marrero Rivera v. Dolz*, 142 D.P.R. 72, 73 (1996)(Énfasis suplido). Es por eso que "al invocar la facultad discrecional de los tribunales apelativos, no puede utilizarse este remedio para casos o situaciones que no conlleven el nivel de importancia adecuado". *García López v. E.L.A.,* supra, pág. 8.

Ello tiene que ser así, ya que el uso inadecuado de las mociones en auxilio de jurisdicción afecta de manera injustificada el funcionamiento interno de los tribunales apelativos, "lo cual tiene un efecto detrimental en la administración expedita de la justicia". *Marrero v. Dolz*, *supra*, pág. 73. Es por eso que hemos establecido que los abogados que utilicen de manera inadecuada o abusiva las mociones en auxilio de jurisdicción estarán sujetos a la imposición de sanciones. *García López v. E.L.A.,* supra, pág. 10.

Por otra parte, la presentación de una moción en auxilio de jurisdicción también le impone ciertas

jurisdicción o que pueda causar un daño sustancial a una parte mientras resuelve el recurso. *In re: Reglamento del Tribunal Supremo*, 2011 T.S.P.R. 174, 183 D.P.R. ___ (2011), pág. 59.

Para un estudio sobre el linaje basado en principios de equidad sobre la figura de las mociones en auxilio de jurisdicción, véase *García López v. E.L.A.*, res. 9 de abril de 2012, 2012 T.S.P.R. 69, 2012 J.T.S. 82, 185 D.P.R. ___ (2012).

obligaciones al Tribunal de Apelaciones. Si la situación planteada en la moción es de verdadera urgencia, el Tribunal de Apelaciones abusa de su discreción si no la atiende con la celeridad y premura debida. Véase *Pantoja Oquendo v. Mun. de San Juan*, supra, pág. 114. Incide también el foro apelativo intermedio si concede términos a las partes para que se expresen en cuanto al remedio solicitado en una moción en auxilio de jurisdicción si con ello se crea un riesgo de convertir la controversia en académica o se fomenta un inaceptable panorama de incertidumbre jurídica. *García López v. E.L.A.,* supra, pág. 16.

En cuanto a los remedios que puede constituir el Tribunal de Apelaciones en auxilio de jurisdicción se encuentran las órdenes de paralización. Desde *Peña v. Federación de Esgrima de P.R.*, 108 D.P.R. 147 (1978), establecimos que los foros apelativos pueden constituir esas órdenes a su discreción siempre y cuando la parte que lo solicita cumpla con los siguientes requisitos: "(a) que el peticionario presente un caso fuerte de probabilidad de prevalecer en los méritos de la apelación; (b) que demuestre que a menos que se detenga la ejecución sufrirá un **daño irreparable**; (c) que ningún daño substancial se causará a las demás partes interesadas y (d) que suspensión de la sentencia no perjudica el interés público". *Íd*. pág. 154 (Énfasis suplido). Estos requisitos han sido

recientemente reiterados por nuestra jurisprudencia. Véase *García López v. E.L.A.,* supra, pág. 12; *Pantoja Oquendo v. Mun. de San Juan*, supra, pág. 109; *Plaza Las Américas v. N & H*, 166 D.P.R. 631, 642-643 (2005).

III

En vista del análisis que antecede, pasamos a determinar si la Moción en Auxilio de Jurisdicción presentada por I.D.S. ante el Tribunal de Apelaciones cumplió con estos requisitos jurisprudenciales.

De una simple lectura de la moción presentada podemos constatar que no se cumplió con el requisito indispensable de demostrar que, de no paralizar los procedimientos administrativos dentro del área del C.E.N., I.D.S. sufriría un **daño irreparable**. Nos explicamos.

A través de cinco (5) párrafos, los recurridos presentaron unas alegaciones en el vacío sobre el daño que sufriría el medio ambiente en el área del C.E.N. si se comenzaba con el proceso de meras solicitudes de Consultas de Ubicación y Permisos de Desarrollo o Construcción. No se hace mención en cuanto a algún permiso que ya se haya aprobado o que su aprobación sea inminente. Tampoco se presentó evidencia o alegación en cuanto a presentes construcciones en el área del C.E.N.

Lo que sí incluyó la Moción en Auxilio de Jurisdicción presentada ante el Tribunal de Apelaciones fueron alegaciones generales sobre "el alto interés de diversos

interesados en utilizar y explotar los terrenos valiosos del CEN, lo cual se evidencia por el largo historial de proyectos"[2] que los recurridos mencionan en sus escritos. No obstante, no se colocó el foro apelativo intermedio en posición de dilucidar si ese alegado historial de interés por desarrollar proyectos en el área del C.E.N. se traducía a un **daño irreparable inminente** que conllevara la necesidad de una orden de paralización de procedimientos administrativos.

Como hemos visto, las órdenes de paralización que se pueden conceder a consecuencia de una moción en auxilio de jurisdicción apelativa solo están disponibles para situaciones de **verdadera urgencia**. Al igual que en otras áreas del Derecho, no podemos permitir que el concepto de "daño irreparable" incluido entre los factores a considerar para emitir una orden de paralización se convierta en un "ingenioso ejercicio académico de lo concebible". *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 566 (1992), citando a *United States v. Students Challenging Regulatory Agencies Procedures (SCRAP)*, 412 U.S. 669, 688 (1973).

Al no cumplir con uno de los requisitos jurisprudenciales necesarios para la emisión de una Orden de Paralización, el Tribunal de Apelaciones erró al declarar Con Lugar la Moción en Auxilio de Jurisdicción presentada por I.D.S. ante ese foro. Los requisitos

---

[2] Véase apéndice petición de *certiorari*, pág. 126.

expuestos en *Peña v. Federación de Esgrima*, supra, y confirmados en *Pantoja Oquendo v. Mun. de San Juan*, supra, y *García López v. E.L.A.,* supra, no son guías discrecionales, sino elementos constitutivos que deben ser analizados en conjunto para determinar si la solicitud en auxilio de jurisdicción es meritoria.

Conforme discutido, en el caso de autos I.D.S. no pudo articular la existencia de un **daño irreparable** que ameritara la concesión de una Orden de Paralización de los procedimientos administrativos de Consultas de Ubicación, Permisos de Desarrollo o Construcción. Como mucho, sus alegaciones son prematuras. Por esa razón incidió el Tribunal de Apelaciones al emitir una Resolución ordenando la paralización de estos procedimientos.

IV

Por los fundamentos que anteceden, se expide el auto de *certiorari* y se declara Ha Lugar. Por ende, se revoca la Resolución del Tribunal de Apelaciones dictada el 16 de diciembre de 2011. A tales efectos, se devuelve el caso al Tribunal de Apelaciones para que atienda los méritos del recurso de revisión presentado por la parte recurrida de epígrafe ante ese foro.

Lo acordó y ordena el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton disintió sin opinión escrita. La Jueza Asociada señora Fiol Matta emitió una opinión disidente a

la cual se unió la Juez Asociada señora Rodríguez Rodríguez.


                              Aida Ileana Oquendo Graulau
                              Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Iniciativa para un
Desarrollo Sustentable
(IDS) y otros
           Recurridos

                                              *Certiorari*

         v.              CC-2012-021


Junta de Planificación de
Puerto Rico, Representada
por su Presidente, Rubén
Flores Marzán y otros
           Peticionarios


Opinión disidente emitida por la Jueza Asociada señora FIOL MATTA a la cual se une la Juez Asociada señora RODRÍGUEZ RODRÍGUEZ


En San Juan, Puerto Rico, a 29 de junio de 2012.

Este Tribunal, nuevamente, le exige a las personas interesadas en la protección ambiental que cumplan con un grado de prueba mayor que el que nuestra doctrina requiere para demostrar la posibilidad de sufrir un daño irreparable. En esta ocasión, se tildan de "meras alegaciones" los argumentos presentados por un grupo de ciudadanos y ciudadanas para que se paralice la concesión de permisos para desarrollos en un área de alto valor ecológico, mientras el Tribunal de Apelaciones dilucida si se violaron las normas sobre planificación y la política pública ambiental al autorizar el desarrollo en esos

terrenos. Así, una mayoría de este Tribunal permite que se inicien los procesos para construcciones en la zona del Corredor Ecológico del Noreste sin que se haya determinado finalmente si la liberación de esos terrenos previamente protegidos cumplió con las normas de planificación y protección ambiental. Por entender que ese proceder obstaculiza la labor del foro apelativo y pone en peligro una reserva natural de gran importancia para el pueblo puertorriqueño, disiento.[3]

I

La Sentencia que avala una mayoría de este Tribunal reconoce que los tribunales apelativos tienen facultad para emitir órdenes, producto de mociones en auxilio de jurisdicción, con el propósito de hacer efectiva su jurisdicción en los asuntos que tienen pendientes y evitar fracasos en la administración de la justicia. En el caso del Tribunal de Apelaciones, esa potestad está establecida en la Regla 79 de su Reglamento y en ésta se basó el foro apelativo al tomar la decisión de paralizar temporeramente los trámites administrativos relacionados con la concesión

---

[3] Los hechos más relevantes para la controversia están resumidos en la Sentencia, por lo que no los repetiremos. No obstante, debemos resaltar unos datos que no se mencionan en la Sentencia y que están directamente relacionados con uno de los señalamientos de error del recurso de revisión. Estos son: que el Plan de Calificación del Área de Planificación Especial de la Gran Reserva del Noreste no estuvo disponible para el público interesado en presentar comentarios en la vista en la fecha requerida y que no se permitió que todas las personas que solicitaron deponer en la vista participaran.

de permisos de construcción para el área cuya calificación y protección se encuentra en controversia.

Uno de los reclamos de los grupos de ciudadanos en su recurso de revisión es que, utilizando erróneamente el mecanismo de exclusión categórica, las agencias no prepararon los documentos ambientales que nuestro ordenamiento requiere que se realicen antes de tomar decisiones que pueden afectar significativamente el medio ambiente. Reiteradamente, hemos manifestado que estos estudios se tienen que llevar a cabo en las etapas más tempranas del proceso de planificación para el otorgamiento de permisos por parte del Gobierno.[4] No tiene sentido posponer el análisis sobre el impacto ambiental que podrían tener ciertos desarrollos en el área del Corredor para después de que se hayan otorgado los permisos para los mismos, o, peor aun, después de que hayan iniciado las construcciones. Por eso, al paralizar la concesión de permisos mientras resuelve esta controversia, el Tribunal de Apelaciones, lógicamente, actuó para preservar su jurisdicción y evitar que el caso pendiente de adjudicación se tornara académico.

Además, los ciudadanos argumentan que la reclasificación de ciertos terrenos del Corredor y la viabilización de consultas de ubicación sobre éstos tiene el

---

[4] Misión Industrial v. J.C.A., 145 D.P.R. 908, 925 (1998). *Véase también* Lozada Sánchez *et al.* v. A.E.E., J.P., 2012 T.S.P.R. 50, págs. 22-23.

efecto de flexibilizar los criterios de evaluación de cumplimiento ambiental para los proyectos propuestos para el área. Permitir que se consideren las solicitudes de permisos antes de que se resuelva el caso puede conllevar que el Gobierno tome decisiones sobre bases inadecuadas. Si el recurso se resuelve a favor de IDS, los permisos concedidos podrían ser inválidos y se habrían desperdiciado recursos tanto del Estado como de las empresas desarrolladoras.

El Estado alega que la orden del tribunal apelativo impide la gestión gubernamental al paralizar sus funciones ministeriales dirigidas a la sana administración pública.[5] Sin embargo, el foro apelativo fue muy cuidadoso al dictar su Resolución y limitó la paralización temporera a las solicitudes de concesión de permisos de desarrollo y construcción en el área en controversia, haciendo la salvedad de que "[e]sta paralización no será aplicable a cualquier gestión administrativa conducente a la realización de estudio, evaluación o documento ambiental dirigido a dar cumplimiento al proceso de planificación ambiental".[6] Por lo tanto, las funciones ministeriales primarias de las agencias de permisos del Gobierno nunca fueron suspendidas.

La paralización temporera tampoco provocaba un daño a las partes interesadas en obtener los permisos, en parte porque las estadísticas sobre la actividad de la

_____

[5] Petición de Certiorari, págs. 20-21.

[6] Resolución del TA, KLRA 2011 00747, pág. 5.

construcción demuestran que no existe demanda para desarrollos turísticos, residenciales y comerciales en estos momentos.[7] Esperar a que el Tribunal de Apelaciones resolviera la controversia no hubiese tenido un efecto significativo sobre proyectos en riesgo de quedarse estancados en la fase de construcción en lo que mejora la situación económica del País, como ha sucedido con muchos otros desarrollos en el área.[8]

Si el Tribunal de Apelaciones decidió acceder a la solicitud de paralización fue debido a que evaluó las posiciones de ambas partes y concluyó que el Corredor Ecológico sufriría un daño irreparable si no se suspendía la concesión de permisos, mientras que ni la otra parte ni el interés público experimentarían un daño sustancial como

---

[7] *Véase* Alegato como *Amicus Curiae* del Colegio de Arquitectos y Arquitectos Paisajistas de Puerto Rico, 13 de febrero de 2012, págs. 10-11.

[8] *Véase* Solicitud de Intervención como Amigo de la Corte y Alegato del Monseñor Eusebio Ramos Morales, 13 de febrero de 2012, pág. 5. El Obispo de la Diócesis Católica de Fajardo-Humacao expresó que los desarrollos turísticos y comerciales que amenazan la integridad del Corredor son innecesarios, porque en la Carretera Núm. 3 hay tres proyectos a mitad y en áreas cercanas hay muchos otros abandonados. *Véase también* Departamento de Recursos Naturales y Junta de Planificación, Declaración de Impacto Ambiental Estratégica, Plan Integral de Usos de Terrenos y Manejo de la Reserva Natural del Corredor Ecológico del Noreste, septiembre 2008, págs. 155-180, 219-220, 259-267; Apéndice del Certiorari, págs. 1141-1165, 1205-1206, 1245-1253. El Plan Integral, por ejemplo, señala que, según análisis preparados por la Asociación de Bancos, la demanda de vivienda en la región noreste ha sufrido una reducción drástica. *Íd.* pág. 174; Apéndice, pág. 1160. El inventario de habitaciones e instalaciones turísticas en la zona es extenso. *Íd.* págs. 174-179; Apéndice, págs. 1160-1165.

consecuencia de la paralización.[9] Más importante aun, si el
foro apelativo concedió la paralización, en su sana
discreción y amparado en su poder inherente para así
hacerlo, fue porque entendió que de esa forma garantizaría
su jurisdicción.[10] Al suspender los efectos de la orden de
paralización, este Tribunal limita injustificadamente la

---

[9] Cabe señalar que, utilizando el mismo análisis que plantea
la Sentencia, se tendría que concluir que la solicitud de
auxilio presentada por el Gobierno ante este Tribunal no
cumplió con los requisitos para que se suspendieran los
efectos de la paralización decretada por el foro apelativo.
Esto porque no contiene argumentos sobre un perjuicio
directo e inmediato. Sólo menciona, en términos generales,
que se paralizan "ciertas funciones consecuentes a la
difícil labor de implantación de política pública de
gobierno", a pesar de que la Resolución del Tribunal de
Apelaciones excluye expresamente de la paralización ciertas
funciones administrativas necesarias para la formulación de
política pública. Lo que paralizó el foro apelativo fue la
consideración y la concesión de permisos a entes privados.
Siguiendo las exigencias de la Sentencia, habría que
observar que la moción del Gobierno no incluyó una lista de
proyectos que se encontraran en esa etapa y tuvieran un
impacto positivo en el interés público. Faltando esto, y
según el método de análisis que adopta una mayoría de este
Tribunal, es forzoso concluir que la paralización concedida
por el Tribunal de Apelaciones no estaba causando daño
alguno.

[10] García López v. E.L.A., 2012 T.S.P.R. 69, págs. 6-7. Vale
recalcar que los criterios para emitir órdenes de
paralización -la probabilidad de prevalecer en los méritos
de la apelación, el daño irreparable que sufrirá el
peticionario de no concederse, que las demás partes
interesadas no sufrirán un daño sustancial si se concede y
que no se perjudica el interés público con la concesión- se
establecieron en Peña v. Federación de Esgrima de P.R., 108
D.P.R. 147, 154 (1978), para guiar a los juzgadores. No
obstante, el propósito de ese análisis no es verificar que
se cumpla con lo que se puede interpretar que significa cada
criterio por separado, sino que los tribunales puedan
determinar si una orden de ese tipo es necesaria para
preservar su jurisdicción en el caso que tengan pendiente de
adjudicación.

facultad del foro apelativo de velar por mantener la eficacia de su jurisdicción.

II

Una mayoría de este Tribunal revoca sin mayor análisis la decisión del foro apelativo, que tomó en consideración no sólo la moción en auxilio de jurisdicción sino también el expediente completo del recurso de revisión y la oposición del Gobierno, para establecer un remedio que protegiera su jurisdicción con el menor impacto posible para la parte afectada. La Resolución del Tribunal de Apelaciones describe específicamente las acciones que se paralizaban y las acciones que podían continuar, lo cual demuestra que, distinto a lo que señala la Sentencia de este Tribunal, ese foro analizó cuidadosamente los criterios para conceder órdenes de paralización.

Asimismo, la moción en auxilio de jurisdicción, que la Sentencia cataloga como escueta e insuficiente para pedir el remedio que concedió el Tribunal de Apelaciones, discute y fundamenta las razones por las cuales cumple con todos los requisitos para la expedición del auxilio.[11] La Sentencia de este Tribunal se basó únicamente en los señalamientos

_____

[11] Aunque la cantidad de palabras contenidas en una moción no importa tanto como su contenido, debemos aclarar que, cuando la Sentencia enfatiza que la moción en auxilio de jurisdicción sólo incluye cinco párrafos de alegaciones, se refiere a la discusión bajo el acápite de "daño irreparable", que se tiene que leer en conjunto con otras secciones de la moción a las que hace referencia. La moción, que tiene nueve páginas en total, incluye fundamentos para evidenciar que cumple con todos los requisitos de Peña v. Federación de Esgrima de P.R.

relacionados con el "daño irreparable" discutidos en la moción en auxilio de jurisdicción para su decisión de revocar al foro apelativo. Contrario a lo que indica la Sentencia, los señalamientos sobre el daño irreparable que sufrirían los peticionarios de no concederse el auxilio no son "alegaciones en el vacío", sino que hacen referencia al historial del Corredor y de la controversia ante el foro apelativo, así como a los documentos contenidos en el Apéndice del Recurso de Revisión, incluyendo evaluaciones para desarrollos específicos de hoteles dentro del Corredor preparadas a petición del Gobierno y mapas de ubicación de proyectos propuestos.[12] Además, se particularizan los proyectos que se encuentran ante la consideración de las agencias de permisos, que ubicarían dentro del área del Corredor cuya protección se reclama en el recurso ante el Tribunal de Apelaciones.[13] De aprobarse estos proyectos, se construirían más de 2,600 unidades residenciales y cuartos

---

[12] Sentencia, pág. 10. Moción Solicitando Orden en Auxilio de Jurisdicción ante el Tribunal de Apelaciones, págs. 2-3 y 5-6, Apéndice del Certiorari, 123-124 y 126-127.

[13] La moción enumera cinco proyectos que se encuentran en proceso de evaluación para construirse dentro del Corredor, con sus números de caso ante las agencias: "San Miguel Resort (DIA-PA JCA-01-0030 (CT) / C.U. 2001-23-0961-JPU); Dos Mares Resort (DIA-E JCA-99-015 (JP) / C.U. 1998-24-0681-JPU); Paradise Found Villas (C.U. 2006-24-0534-JPU); Seven Seas Resort (C.U. 1996-24-0003-JPU) y Playa Azul Center (C.U. 2008-23-0444-JPU)". Moción Solicitando Orden en Auxilio de Jurisdicción ante el Tribunal de Apelaciones, pág. 3, Apéndice del Certiorari, pág. 124. También menciona otros proyectos pendientes en áreas cercanas al Corredor, resoluciones de la Junta de Planificación y controversias sobre derechos de opción sobre terrenos públicos en el Corredor. *Íd.*

de hotel y condohotel, además de las instalaciones relacionadas con el funcionamiento de esos desarrollos y un centro comercial. La mayoría de esos proyectos se encuentra en proceso de consulta de ubicación, el trámite administrativo para que la Junta de Planificación evalúe usos de terrenos propuestos para zonas en las que éstos no están permitidos por la reglamentación aplicable, pero que esa agencia tiene discreción para autorizar.[14]

La Sentencia que hoy se emite señala que la solicitud de auxilio no menciona permisos que ya se hayan aprobado ni presenta evidencia de construcciones que se estén realizando en el Corredor en el presente.[15] Precisamente, eso es lo que IDS quiso evitar al pedir que se paralizaran las consultas de ubicación y los procesos de concesión de permisos. El fin de las consultas y los permisos es que se lleve a cabo un desarrollo, y el propósito de la petición de paralización era que no se construyeran proyectos en los terrenos sobre los que trata el caso hasta tanto se adjudicara el nivel de protección que merecen esas tierras y los requisitos de planificación ambiental que se tienen que cumplir si se permite algún tipo de desarrollo en el área.

Cuando se solicita una orden de paralización en auxilio de jurisdicción es porque, de no actuar con premura, las consecuencias serán irreversibles o el caso se tornará

---

[14] *Véase* Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70, 79-80 (2000).

[15] Sentencia, pág. 10.

académico. En casos como el presente, en el que se argumenta que se estarían permitiendo desarrollos sin haberse preparado los documentos ambientales requeridos y sin cumplir con las normas adecuadas de planificación, es de vital importancia la intervención oportuna de los tribunales.[16] Hemos establecido que incumplir con el requerimiento de preparar una declaración de impacto ambiental, en las etapas más tempranas del desarrollo, es "de por sí considerado un daño irreparable" debido al carácter permanente de los daños ambientales.[17] Además, Puerto Rico ha adoptado como política pública el principio internacional de prevención o *precautionary principle*, que dicta que, cuando exista la posibilidad de daños graves o irreversibles al ambiente, no se pueden posponer las medidas para prevenirlos amparándose en que no hay certeza de que estos vayan a ocurrir.[18]

En ese contexto, llama la atención que la Sentencia de este Tribunal subraye que las mociones en auxilio de jurisdicción no deben utilizarse para casos que "no conlleven el nivel de importancia adecuado" y que se use ese

---

[16] Por ejemplo, a principios de este mes, ordenamos que se suspendiera el permiso de construcción de una torre de telecomunicaciones mientras atendíamos la controversia de si se cumplió con lo dispuesto en los reglamentos de planificación al otorgar el permiso. Municipio de San Sebastián v. QMC Telecom, LLC, CC-2012-233.

[17] Misión Industrial P.R. v. J.P. y A.A.A., 142 D.P.R. 656, 681-682 (1997).

[18] Art. 4(b)(5), Ley sobre Política Pública Ambiental, Ley Núm. 416-2004, 12 L.P.R.A. sec. 8001a(b)(5).

criterio como fundamento para denegar la paralización solicitada en un caso como este, que, sin duda, es uno de alto interés público, basado en nuestra disposición constitucional y nuestra política pública de protección de los recursos naturales.[19] El Corredor Ecológico del Noreste es una de las áreas de mayor valor ecológico que tiene Puerto Rico.[20] Está compuesto por 3,057 cuerdas de terreno entre Luquillo y Fajardo, que incluyen casi todos los tipos de humedales costeros de la Isla y albergan más de 860 especies de flora y fauna, incluyendo 50 especies endémicas, vulnerables y en peligro de extinción, que dependen de la conservación integral de este ecosistema para sobrevivir.[21] Además, la vida natural del Corredor interactúa con las zonas protegidas adyacentes de la Reserva Natural de Las Cabezas de San Juan, la Reserva Natural del Río Espíritu Santo y el Bosque Nacional El Yunque. En los últimos 40 años, agencias estatales y federales han promovido diversas iniciativas para conservar los ecosistemas naturales de esta región y organizaciones internacionales han solicitado la

---

[19] Sentencia, pág. 8. Art. VI, sec. 19, Const. P.R.

[20] *Véase* Exposición de Motivos, P. del S. 2282 de 22 de septiembre de 2011.

[21] *Véase* Departamento de Recursos Naturales y Junta de Planificación, Declaración de Impacto Ambiental Estratégica, Plan Integral de Usos de Terrenos y Manejo de la Reserva Natural del Corredor Ecológico del Noreste, septiembre 2008, págs. 31-153, 181-220; Apéndice del Certiorari, págs. 1019-1139, 1167-1206. *Íd.*, Anejos 6-13 (listas de elementos críticos, invertebrados, peces, anfibios, reptiles, aves, mamíferos y plantas que se encuentran en el Corredor); Apéndice del Certiorari, págs. 1426-1480.

protección del Corredor por ser el área de anidaje más importante del tinglar, la tortuga marina más grande del mundo, que se encuentra en peligro de extinción. Si algún caso cumple con el requisito de "importancia adecuada" enunciado por una mayoría del Tribunal es este caso.

El inmenso valor ecológico del Corredor llevó a que la totalidad de los terrenos que lo componen se declarara Reserva Natural en el 2008, por orden ejecutiva.[22] Su importancia también fue reconocida recientemente por el Senado y la Cámara de Representantes de Puerto Rico al aprobar, ambos cuerpos por unanimidad, el Proyecto 2282, que se convirtió en ley con la firma del gobernador Luis Fortuño el 25 de junio de 2012.[23] El proyecto de ley, que se identifica como "un primer paso para proteger efectivamente y a perpetuidad los terrenos que componen el Corredor Ecológico del Noreste",[24] afirma que "[a] pesar de su gran valor natural, el CEN ha estado amenazado por la propuesta construcción de varios proyectos residenciales-turísticos y el desparrame urbano experimentado durante las últimas décadas en la zona costanera y en la región noreste de la

---

[22] Órdenes ejecutivas OE-2007-37 y OE-2008-22; Junta de Planificación, resoluciones PU-02-2008-24 y R-08-37-2.

[23] La medida fue aprobada en el Senado el 23 de abril de 2012 y en la Cámara el 21 de mayo de 2012. Las enmiendas sugeridas por el Gobernador para aclarar unas incongruencias en los números de catastro que se citaban fueron aprobadas por la Cámara y el Senado el 14 de junio de 2012.

[24] P. del S. 2282 de 22 de septiembre de 2011, pág. 4.

Isla".[25] La nueva ley ordena la conservación de todos los terrenos públicos y patrimoniales del Estado dentro del Corredor, equivalentes al 66% de la reserva natural original.[26]

Asimismo, la trascendencia de esta zona para la sociedad puertorriqueña se reflejó en la presentación de cuatro alegatos como amigos de la corte en el presente caso de agrupaciones que incluyeron las organizaciones profesionales Sociedad Puertorriqueña de Planificación y Colegio de Arquitectos y Arquitectos Paisajistas, así como las comunidades católicas y evangélicas de los pueblos aledaños al Corredor. Todas estas personas expresaron su preocupación ante el peligro en el que este Tribunal colocó al Corredor al suspender la paralización ordenada por el foro apelativo y las repercusiones que la resolución de esta controversia tendrá sobre la conservación de los recursos naturales del País y su disfrute por las generaciones presentes y futuras.[27]

---

[25] *Íd.* pág. 3.

[26] Aún quedarían desprotegidas 450 cuerdas de los terrenos del Corredor, dentro de las cuales están proyectados los desarrollos en pugna.

[27] La Sociedad Puertorriqueña de Planificación indicó que, debido a su deber ético de contribuir al mejor desarrollo urbano, ambiental, social y económico de Puerto Rico; al alto interés público de la controversia y a que siempre ha abogado por la protección íntegra del Corredor, recomendada mantener la paralización de los trámites de permisos. Explicó que, de lo contrario, se permitiría un cambio drástico en las calificaciones de uso del suelo y la construcción de proyectos que impactarían significativamente

La designación del Área de Planificación Especial de la Gran Reserva del Noreste, que se está impugnando en el Recurso de Revisión, se aprobó mediante exclusión categórica, un mecanismo para eximir del requisito de preparar un documento ambiental -evaluación ambiental o declaración de impacto ambiental- reservado para situaciones en las que se determina que la acción propuesta es una predecible o rutinaria que no tendrá un impacto ambiental significativo. Las construcciones de proyectos en los terrenos del Corredor que antes estaban protegidos se viabilizaron en virtud del Plan y Reglamento de Calificación

---

los ecosistemas de la zona, sin la debida planificación. *Véase* Moción para Intervenir como *Amicus Curiae* de la Sociedad Puertorriqueña de Planificación, 13 de febrero de 2012. El Colegio de Arquitectos urgió a mantener la paralización, señalando que el argumentar que los daños que ocasiona un permiso son especulativos porque sólo la construcción efectiva puede tener impacto en el ambiente equivale a erradicar la función previsora de la planificación. Afirmó que es imperativo corregir la idea expresada por el Estado de que un plan que incide sobre la calificación del suelo no conlleva, de por sí, efecto ambiental alguno. *Véase* Alegato del Colegio de Arquitectos, *supra*. La Iglesia Evangélica Unida de Puerto Rico ha solicitado, desde el 2007, que se proteja el Corredor, pues sus miembros disfrutan de los recursos naturales del área y entienden que es responsabilidad de los seres humanos promover la justicia ecológica, ya que Dios creó la naturaleza con un propósito definido y las personas no pueden alterarlo mediante una explotación irresponsable que resulta en la degradación de su calidad de vida. *Véase* Solicitud de Intervención como Amigo de la Corte y Alegato del Reverendo Edward Rivera Santiago, 13 de febrero de 2012. La Diócesis Católica de Fajardo-Humacao también ha pedido que se mantenga el Corredor como una reserva ecológica y los feligreses de las parroquias cercanas al Corredor participan en actividades de concienciación sobre la importancia de los recursos naturales de la zona y la protección del tinglar, como parte de su deber cristiano de proteger la creación para el bienestar de la humanidad. *Véase* Alegato del Monseñor Ramos Morales, *supra*.

Especial de la nueva Gran Reserva, que también se está impugnando en el Recurso de Revisión y que permite la recalificación de los terrenos para consentir usos más intensos. La moratoria a las consultas de ubicación, los permisos y las obras de construcción en el área del Corredor que estuvo vigente desde el 2009 se eliminó con la aprobación del Área de Planificación Especial.[28] A este panorama se añade la simplificación de los procesos para la obtención de permisos de construcción y la reducción de mecanismos de revisión administrativa sobre otorgación de permisos que estableció la Ley para la Reforma de los Procesos de Permisos de Puerto Rico.[29]

Ante este cuadro y el hecho de que los terrenos del Corredor eliminados de la zona protegida mediante la aprobación del Área de Planificación Especial de la Gran Reserva del Noreste corresponden a los que han sido identificados para construir los proyectos incluidos en la lista que se presentó en la moción de auxilio de IDS, era lógico que el Tribunal de Apelaciones concluyera que, de no emitir la orden de paralización con carácter de urgencia, los peticionarios se expondrían a un daño irreparable. Este Tribunal debió haberle brindado deferencia a esa decisión y

---

[28] La Junta de Planificación estableció la moratoria en su Resolución PU-002-CEN-24(23) de 3 de noviembre de 2009 y la extendió mediante sus resoluciones PU-002-CEN-24(23)-02 de 5 de mayo de 2010 y PU-002-CEN-24(23)-03 de 27 de agosto de 2010.

[29] Ley Núm. 161-2009, 23 L.P.R.A. secs. 9011-9028i.

haberle permitido que resolviera los méritos del caso ante sí con la garantía de no perder su jurisdicción que le proveía la paralización. Si algún caso era de tal importancia que exigía que el foro apelativo actuase en auxilio de su jurisdicción, éste era el caso. No es razonable esperar a cuando ya sea muy tarde.

Por todo lo anterior, disiento.


Liana Fiol Matta
Jueza Asociada